THOMAS J. JOHNSON and COMPANY, Inc., (plaintiff) appellant, v. MARIE E. MUELLER, (defendant and third party plaintiff), appellant, v. JOSEPH R. ROBISON and HILDA E. ROBISON, his wife, (third party defendants).—No. 40474.—205 S. W. (2d) 521.

Division Two, October 13, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, November 10, 1947.

*Edward C. Schneider* and *R. E. Kleinschmidt* for plaintiff-appellant.

*Matthes and Thurman* for defendant and third-party plaintiff-appellant.

1112

 ELLISON, J.—This is a combined original and third party action under Sec. 20 of the Civil Code.[1] The causes were tried in equity and the appeal has been lodged here on the ground that title to real estate is involved in the third party action. The principal questions to be decided are: whether the original plaintiff-appellant, an incorporated realtor, represented the original defendant with undivided fidelity in securing a purchaser and effecting a sale of real estate for the original defendant-appellant; whether the latter had a merchantable title to the land; and whether the trial court erred in permitting the original defendant as third party plaintiff to implead the contract purchaser of the land, and his wife, as third party defendants.

In the original action the plaintiff realtor sued the original defendant, Mrs. Marie E. Mueller, for $690, the items of which were: a $425 real estate commission of 5% for securing a purchaser for her 90 acre farm in Jefferson county at the price of $8500; plus $15 advanced for extending the abstract of title; plus $250 refunded by the plaintiff realtor to the purchaser, Joseph R. Robison, out of $500 earnest money the latter had paid down. This refund was made after the sale had failed to go through.

The plaintiff contended it was entitled to recover, notwithstanding the sale was not consummated, on the ground that the failure was the fault of the original defendant, Mrs. Mueller, in that she failed to deliver a warranty deed within the time prescribed by the written contract of sale between her and the purchaser, and because her title was not merchantable in fact and law.

The original defendant Mueller contended: that she did have a merchantable title; that she was at all times ready, able and willing to perform the sale contract; that the plaintiff realtor did not represent her with undivided fidelity, though she alone was paying the commission; but on the contrary without her knowledge actually represented the purchaser also, and wrongfully told the latter her title was not merchantable in consequence of which he refused to take the farm; and that the plaintiff realtor furthermore permitted the purchaser, Robison, to appropriate valuable fruits grown on the farm while he was in possession thereof through the summer of 1945, and then to move off without paying for them.

After the defendant Mueller had filed her original answer, she filed a motion for leave to implead the purchaser and his wife, Hilda E. Robison (who was not a party to the sale contract), as third party defendants. That motion was sustained by the court over the original plaintiff's lengthy suggestions in opposition, and the defendant Mueller as third party plaintiff thereupon filed her third party peti-

[1]References are to sections of Laws Mo. 1943, p. 353 et seq., and same decimal numbers appended to Sec. 847, Mo.-R. S. A. (pocket part).

tion in two counts against the Robisons. Both counts alleged her ability to perform the sale contract and that she had always had a merchantable title. The second count alleged additionally that the Robisons had been in possession of the farm and gathered fruits therefrom worth $750. The prayer of both counts was for specific performance, and payment of the balance of the purchase price. The second count prayed alternatively that if that relief be denied, she be awarded $750 damages for the fruits taken.

The third party defendants Robison answered denying liability and contending: that the defendant Hilda Robison was not a party to the contract of sale and should not have been impleaded; that the defendant Joseph R. Robison, with his wife as a member of his household, was entitled under the contract to possession of the farm and growing fruits; that no deed conveying a merchantable title was ever tendered by the third party plaintiff, Mrs. Mueller; that on the contrary the original plaintiff realtor was the third party plaintiff's agent, not Robison's, and as such informed Robison the title was not merchantable and that it would be necessary to bring a quiet title suit which would take two or three months more; that the defendant Robison thereupon demanded and received back his $500 earnest money, moved off the farm and bought another.

The original plaintiff realtor refunded the entire $500, although $250 of it had already been paid to the original defendant-third party plaintiff, Mrs. Mueller. The $250 item in the original suit represented that money.

The sale contract in part provided as follows (parentheses ours): "This contract to be binding when and if signed by the other party within *four* days. Sale is to be closed at office of (the plaintiff realtor) on or before 7/11/45 (July 11, 1945) under the usual closing practices of the St. Louis Real Estate Exchange hereinafter set forth, and made a part of this contract (copy of rules attached). Title to property is to pass when sale is closed. Possession is to be delivered on June 30, 1945. Deed to be made to Joseph R. Robison and Hilda E. Robison, his wife. Commission shall be 5%, to be paid by seller and to be a lien on the property." The contract was signed by both parties, Marie E. Mueller, the seller, and Joseph R. Robison, the purchaser, on June 11, 1945. Robison's wife was not a party to it, and did not sign. Neither did the plaintiff realtor sign, though it receipted for the earnest money.

The rules of the St. Louis Real Estate Exchange, which were made a part of the contract, required a general warranty deed and "merchantable title," and provided in part: "If title is merchantable, purchaser shall pay for the certificate of title and recorder's fees; if title must be perfected seller shall pay cost of perfecting, and purchaser pay for certificate of title; if title fails and cannot be perfected within 60 days from date of this contract, earnest money shall

be returned to purchaser and seller shall pay for certificate of title and pay agent's commission and expenses. Time is of the essence of this contract.''

In addition to the foregoing, the evidence showed that the original defendant-third party plaintiff, Mrs. Mueller who was a widow, had listed her farm for sale with the plaintiff realtor two or three months before June 11, 1945, when the sale contract with Joseph R. Robison was made. At or about the latter date she delivered to the plaintiff realtor her abstract of title to the farm, which covered the title only to May 25, 1922. Mr. Thomas J. Johnson, president of the plaintiff realtor, testified he mailed this abstract to the abstractor, Mr. Schubel, for extension.

On August 13, 1945, at the telephonic request of Mr. Johnson, Mr. Schubel, who was a lawyer as well as an abstractor, issued a certificate of title stating that the fee simple title to one quarter-quarter section of the 90 acre farm was well vested in the original defendant-third party plaintiff, Mrs. Mueller. But as to the other quarter-quarter section the letter said the title was vested in one Emilie Schilling (who, if living, resided in Germany), and that on July 7, 1907, one John Reichart had conveyed that land to two sons from whom it had passed by mesne conveyances to Mrs. Mueller. In other words, as we understand the certificate, that particular tract was omitted in the deed from Emilie Schilling to John Reichart, over 38 years earlier, but had appeared in his and subsequent deeds. At the trial Mr. Schubel explained the defect a little differently, and there may have been the same omission in an earlier deed in 1874. But the defect was at least 38 years old.

The testimony for the plaintiff realtor was that as soon as the title certificate came back to it, its president, Johnson, notified the purchaser, Robison. He further conferred with Mr. Schubel and the latter said a suit to perfect title was necessary and would take three to six months. Purchaser Robison had not only talked to him (Johnson) but also took independent advice, and refused to accept the title. The contract only allowed 60 days from the date thereof, which would be before August 11, to perfect the title. He said he talked to Mrs. Mueller, the defendant seller, and offered to get an extension of time if she would have the title perfected, but she declined. So he refunded the $500 earnest money to purchaser Robison on August 31, stating in the receipt he took that it was because the title was unmerchantable. Robinson had previously moved off the farm on August 25.

There is conflicting testimony as to whether the plaintiff realtor procrastinated in having the abstract extended, and thereby cut down the time within which the title could have been perfected. It is undisputed that Mrs. Mueller delivered her abstract to the plaintiff realtor about the time the sale contract was signed, on June 11, and Mr. Johnson testified he mailed it to abstractor Schubel within

two days. But Mr. Schubel produced the letter which accompanied the abstract when it was sent to him for extension, and it was dated July 30. The abstract was extended to July 31, 1945, the letter transmitting it back to Johnson was dated August 1, and the plaintiff realtor's own statement of account for the $15 paid for the extension was dated August 1. Johnson suggested there might have been *two* abstracts, but admitted the one offered in evidence looked like the one he sent Schubel.

Another very important fact in evidence was this. When Mr. Johnson was asked why he, in behalf of the plaintiff realtor, first talked to purchaser Robison about the defect in the title to the land soon after it was disclosed, he answered it was because Robison was his client, and he (Johnson) represented both parties—that is, the seller and the purchaser. And when asked if he so informed Mrs. Mueller, the seller, who was paying the whole commission, he replied, "I might have. I don't remember. We were representing both parties." These facts were undisputed below and are here. One of the attorneys of record for the plaintiff realtor Mr. Kleinschmidt testified he had assisted the attorney for the third party defendant Robisons in filing their answer at the trial. He said he did this because he thought the interests of those parties and the plaintiff realtor were not in conflict, and that the title was unmerchantable.

Mrs. Mueller, the original defendant and third party plaintiff, testified she had lived continuously on the farm from 1919 to 1942, and that after the flaw in the title was discovered, she went to Mr. Schubel's office with Mr. Johnson and his wife, and that Johnson said Robison would not take the farm. He did not say he was representing Robison. She declared Mr. Schubel advised them to go on with the sale; that the title was all right. And she further testified she told Johnson she was going to get the title cleared. On the stand she stated she was still willing to go through with the contract, and she admitted that under the contract of sale the growing fruits were to go to the purchaser except from one peach tree. The record further shows she did bring a suit to perfect her title to the farm against Emilie Schilling and her unknown consort, heirs, devisees, etc., on November 17, 1945, and obtained a decree on January 15, 1946. But this was after the plaintiff realtor had brought its suit against her on October 6. She testified her predecessor in title had defrayed the expenses of that suit.

Mr. Schubel testified that in his opinion the title to the whole 90 acres was merchantable because the statute of limitations would have run against it and the equitable owner could not be dispossessed. But on cross-examination he testified he thought it advisable for Mrs. Mueller to bring the suit to perfect the title "because some people would object to a title with that sort of a defect in it."

The testimony of the third party defendants, Mr. and Mrs. Robison, need not be reviewed because they won below and have not appealed. However, it should be stated that Mr. Robison affirmatively testified Mr. Johnson, president of the plaintiff realtor, told him the title to the farm had a cloud on it. He got only ten bushels of peaches off the farm, worth about $1 per bushel. And he said he was never a tenant of Mrs. Mueller, but only a contract purchaser.

So much for the evidence. The trial court found for the third party defendants, Mr. and Mrs. Robison, and against the third party plaintiff, Mrs. Mueller, and denied any recovery by the latter against the former either by way of specific performance or damages. As to the original suit, the judgment found in favor of the original plaintiff realtor and against the original defendant, Mrs. Mueller, in the sum of $265, with interest, representing the one-half of the $500 earnest money which the plaintiff realtor had turned over to Mrs. Mueller, and the $15 which it had advanced for the extension of her abstract of title. And all costs were taxed against Mrs. Mueller. While the judgment did not so state in terms, by necessary effect it found against the plaintiff realtor as to its 5% commission of $425. Only the original plaintiff realtor and the original defendant-third party plaintiff Mueller appealed.

As to the third party defendants Robison, it seems clear that the theory on which the trial court reached the foregoing conclusions necessarily must have been that the Robisons rightfully refused to carry out the contract of sale because the title to the farm was defective and unmerchantable—or possibly it may have been because Mrs. Mueller did not perfect her title within the limit of 60 days fixed by the contract; or because she did not tender her deed.

As to the original plaintiff realtor, the trial court's theory must have been that it did not represent Mrs. Mueller with undivided fidelity, and did serve both the seller and the purchaser without her knowledge. For it awarded judgment in favor of the plaintiff realtor as to two of the items sued for, and would have been compelled to do the same with respect to the $425 commission if the plaintiff realtor had come in with clean hands. The sales contract itself provided that "if title fails and cannot be perfected within 60 days from the date of this contract . . . seller shall . . . pay agent's commission and expenses."

That is the theory of Mrs. Mueller's appeal. Her brief makes only two assignments of error: (1) that the plaintiff-appellant realtor did not represent her with reasonable skill and diligence, and with undivided fidelity; (2) that the court should have enforced specific performance because she did have a merchantable title, which was all the sale contract required. The original plaintiff-realtor's brief makes no defense on the first issue and does not discuss it at all— except by contending it was entitled to its commission notwithstanding

the land sale was not consummated, because it procured a purchaser ready, able and willing to buy, whom the seller accepted.

We think the trial court was right in denying the real estate commission to the plaintiff realtor. Its president, Mr. Johnson, testified he was the first one to tell the purchaser, Robison, that the title was defective, and seemingly he did this before he disclosed the fact to Mrs. Mueller, the seller, who was to pay his full commission. In explanation he said he did that because Robison was his client, and that he was representing both parties. When asked whether he had so informed Mrs. Mueller he answered, "I might have, I don't remember. We were representing both parties." This was enough to forfeit the commission. His duty was to represent her alone in good faith, unless he had informed her he was representing both sides and she consented.[2] And in such circumstances the case of Isaac T. Cook Co. v. Craddock-Terry Co. (Mo. App.), 109 S. W. (2d) 731, 733(3) invoked by the plaintiff realtor is not in point; in fact, it is authority against it.

Furthermore, he owed her the duty to exercise reasonable care and diligence.[3] But the clear weight of the evidence shows that he failed to send her abstract of title for extension until July 30, and it was promptly returned to him on August 1, which was too late to get the title perfected by a suit in court, if any were necessary, since the contract required this to be done within 60 days from June 11, 1945, the date of the sale contract, or in other words, before August 11. Indeed, he did not ask for a certificate of title (or opinion) until August 13. Here again he breached his duty.

In support of the second assignment in her brief—that the trial court erred in refusing to decree specific performance—appellant Mueller cites three cases[4] and Sec. 1002, R. S. 1939-Mo. R. S. A., which is the ten year statute of limitations. Whether the evidence here would protect her under that statute or not, the 24 year statute, Sec. 1004, or perhaps the 30 year statute, Sec. 1008, would suffice insofar as the lapse of time is concerned, for she and her husband, themselves, had been in continuous possession of the farm since 1919—26 years before the plaintiff realtor filed its suit in October,

[2]12 C. J. S., sec. 41, p. 96; sec. 43, p. 105; 9 C. J., sec. 38, p. 536; sec. 40, p. 540; 8 Am. Jur., sec. 86, p. 1035; sec. 87, p. 1036; Windsor v. International Life Ins. Co., 325 Mo. 772, 773(7), 783, 29 S. W. (2d) 1112, 1117 (8, 9); Wolfersberger v. Miller, 327 Mo. 1150, 1160(2), 39 S. W. (2d) 758, 762(2); Luikart v. Miller (Mo., banc), 48 S. W. (2d) 867, 869 (5, 6); Hahn-Heberer Realty Co. v. Schrader (Mo. App.), 89 S. W. (2d) 142, 144 (8, 9).

[3]12 C. J. S., sec. 26, p. 69; sec. 38, p. 92; 9 C. J., sec. 36, p. 535; 8 Am. Jur., sec. 94, p. 1041; Russell Grain Co. v. Bainter (Mo. App.), 223 S. W. 769, 770(2); Myers v. Adler, 188 Mo. App. 607, 614 (1, 2), 176 S. W. 538, 540(4).

[4]Danzer v. Moerschel (Mo. Div. 1), 214 S. W. 849(1), 7 A. L. R. 1162; Reeves v. Roberts, 294 Mo. 593. 600-1(2), 242 S. W. 956, 957(2); Aker v. Lipscomb, 300 Mo. 303, 308-12, 253 S. W. 995, 996-7 (1, 2).

1945. Se we proceed directly to the question whether her title was "merchantable" in the sense required by the sale contract.

A merchantable title is defined in McConnell v. Deal, 296 Mo. 275, 297(VI), 246 S. W. 594, 598(5) as one (quoting substantially) "which would enable him (the holder), not only to hold his land, but to hold it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value:" And the Reeves case,[4] cited by appellant Mueller, held a "merchantable" title means the same as a "marketable" title.

The Danzer case,[4] chiefly relied on by appellant Mueller, held: "It may be granted that, in a suit for specific performance of a contract for a marketable title, a title by adverse possession, if adequately proved, is sufficient to justify a judgment for the vendor. Scannell v. Am. Soda Fountain Co., 161 Mo. l. c. 618-9, 61 S. W. 889. If one contracts merely for a marketable title, he cannot insist upon the delivery of something else."

But in that case the contract of sale called for (italics ours), "a warranty deed and an abstract showing good title." And the decision further held: "It is quite as true that, if the contract calls for something more or other than a 'marketable' title, the courts cannot substitute a different contract therefor." The conclusion reached by the decision was that since the contract required an abstract showing good title, it called "for record evidence," and that "nothing less will satisfy the condition no matter what the vendor's real title might be;" that 'it is not sufficient that the title is good in fact—that is, capable of being made good by the production of affidavits or other oral testimony; it must be good of record;' that in such case title by adverse possession will not suffice."

In the Reeves case, supra,[4] cited by appellant Mueller, the opinion also said: "It is true that a marketable title may be shown by affidavits, which connects up the showing made by the record title. Title by adverse possession may perhaps be so shown, and thus a marketable title shown." But the decision went on to say that even when the title was what was usually termed marketable, as distinguished form a purely record title, yet if there be doubt or uncertainty about the title, the chancellor should resolve the doubt in favor of the rejecting purchaser—this on the theory "that no man should be compelled to buy a lawsuit, unless he had contracted to buy one." The defect in the chain of title in that case was, that a deed had been made to Ida M. Smith and the ██ next conveyance was from Amy A. Smith. It was ruled the defect could not be corrected by ex parte affidavits showing they were the same person.

In the last of the three cases cited,[4] the Aker case, the sale contract required the seller within ten days to deliver a complete abstract of title, and allowed the purchaser fifteen days to examine it. It provided, "If the title be good, the seller shall deliver to buyer

. . . a general warranty deed . . . If the title is defective, the buyer shall specify objections in writing . . . within fifteen days''—and the seller was allowed 30 days to rectify the defects, but if it could not be done in that time, the contract to be void. ' This court held the contract called for a good record title and not a mere merchantable title. The defect in the chain of title in that case, as in the Reeves case, was a deed to one person and a later deed from a person of the same surname but a different Christian name. Held: it could not be shown by affidavit that the two were the same person. See also Leath v. Weaver (Mo. App.), 202 S. W. (2d) 125, 129-30 (7, 8).

In the instant case there was no express provision in the sale contract calling for an abstract of title, but both parties proceeded on the theory that one was required. Futhermore, the contract did provide: "If title is merchantable, purchaser shall pay for certificate of title . . . ; if title must be perfected seller shall pay cost of perfecting, and purchaser pay for certificate of title; if title cannot be perfected within 60 days from date of this contract''— the earnest money must be refunded and the seller must pay for the certificate of title, etc. The contract further stipulated "Time is of the essence of this Contract."

These provisions in effect required a perfect merchantable title, and that it be perfected by the seller if such was necessary. They also required a "certificate of title", which in their context signified a certification in writing by someone learned in the law as to the true state of the title, with reference to whether it was merchantable or not. The plain import of the contract was that the certificate should be based on an examination of the record title, or an abstract thereof. And it therefore brings this case within the reasoning of the Danzer, Reeves and Aker cases, supra, which held the seller must furnish a merchantable *record* title, because the title was to be shown by an abstract. Such stipulations must be read together and taken into consideration in determining the quality of title called for by the sale contract.[5]

However, this does not fully answer appellant Mueller's contention. Her brief quotes the part of the Danzer opinion which says: "It may be granted that, in a suit for the specific performance of a contract for a marketable title, a title by adverse possession, if adequately proved, is sufficient to justify a judgment for the vendor." And she relies on the part of the Reeves opinion saying: "It is true that a marketable title may be shown by affidavits, which connect up the showing made by the record title. Title by adverse possession may perhaps be so shown, and thus a marketable title shown." Her theory

[5]Stewart Livestock Co. v. Ostler, 105 Utah 529, 538-40, 144 Pac. (2d) 276, 280-1 (2-7); Annot. 57 A. L. R., p. 1253, p. 1282 IV, p. 1331.

is that she was entitled to a decree of specific performance merely by proving for the *first time* at the trial of her case that she had been in adverse possession for the required time.

Neither of these decisions is very strong. The Danzer case "grants" arguendo that a marketable title may be established by proof of adverse possession in a specific performance suit. And the Reeves case says "perhaps" that may be done. However, we do not dispute their holdings so far as the question of title is concerned. But appellant Mueller had another duty to perform. The contract provided the sale was to be closed on June 11, 1945. It devolved on her to show a merchantable title by that date. Under the Reeves case, if within that time, or even 60 days thereafter, she had attached affidavits to her abstract of title adequately showing adverse or peaceable possession for the statutory periods, and had tendered her warranty deed, she would have been in a stronger position.

But she did not do that, and now contends her showing on the merits at the trial of this case several months later established her right to a decree of specific performance. That contention is directly contrary to the foregoing provisions of the sale contract, and to the further stipulation therein that time should be of the essence of the contract. These provisions were binding on her. Rodgers v. Gruber, 351 Mo. 1033, 1036(1), 174 S. W. (2d) 830(1).

 Her brief contends purchaser Robison waived these time limitations because he did not base his refusal to accept the title solely thereon, but continued the discussions on the merits of the title question after Mr. Schubel had issued his title certificate on August 13—two days after the time limit had expired. We do not agree. Both questions were involved from the beginning. Unless her title was unmarketable she was not entitled to the 60 days extension. And purchaser Robison's continuance of the discussion for a few days after the time limit had expired did not constitute an indefinite waiver thereof.

Futhermore, the evidence was conflicting on this point. Mr. Johnson, president of the plaintiff realtor testified Mrs. Mueller told him she did not know the title was defective and could do nothing about it. He said Mr. Schubel told him it would take three to six months to perfect the title. On the other hand appellant Mueller testified she told Mr. Johnson "we" were going to get the title clear. And a St. Louis attorney representing her wrote purchaser Robison on October 18, demanding $500 for the fruit taken from the farm, but offering to carry out the sale contract "if you still want to buy this property," and stating that "the cloud on the title is now being removed." But the title suit was not brought until November 17, 1945, and a decree was not obtained until January 15, 1946, over five months after the expiration of the time limit on August 11. All this was after the plaintiff-appellant realtor had filed its instant suit

against Mrs. Mueller on October 6, 1945. And the expenses of the title suit were not paid by her, but by her immediate predecessor in title, a Mr. Reichert.

It is evident Mrs. Mueller was poorly advised by her realtor in the beginning, but we can see no reason for making the third party purchaser Robison suffer the consequences. Although the realtor's president, Mr. Johnson, testified he represented both parties that would not bind purchaser Robison as a principal unless he so understood and acquiesced in the bad faith. His answer pleaded Johnson did not represent him, but he was not asked that question at the trial. We can see no reason for overturning the trial court's judgment.

The only remaining questions to be discussed are covered by the first three assignments in the plaintiff-appellant realtor's brief. They complain that the trial court erred in permitting the defendant-appellant Mueller to implead the purchaser Robison and his wife as third party defendants, under Sec. 20 of the Civil Code. The first one raises the point that Mrs. Robison did not sign the sale contract and was not a party to it, and therefore should not have been impleaded. The second objects that neither Robison nor his wife was a *tenant* of vendor Mueller while they occupied the farm between June 30 and August 25, and therefore could not be sued for the value of fruit they took, as *rent*.

As to the first assignment, it is true Mrs. Robison was not a subscribing party to the sale contract, but it did provide the deed should be made to both her and her husband. Doubtless for that reason she was joined as a third party defendant in Mrs. Mueller's specific performance suit. As to the second assignment, it is further true that her original answer to the plaintiff realtor's petition Mrs. Mueller did charge it was a party to the acts of the "tenant" in wrongfully taking the fruit. But that allegation was abandoned, and in paragraph 10 of her amended answer she merely charged that the realtor wrongfully permitted the Robisons to remain in possession of the farm and to take the fruits without paying therefor. And in the second count of ▇▇▇ her third party petition for specific performance the charge was that the Robisons retained possession of the farm and exercised acts of *ownership* and gathered the fruits to her *damage* in the sum of $750, for which judgment was alternatively prayed.

The third assignment in the brief is based on Sec. 20(a) of the Civil Code, which in part permits the defendant in an action, by leave of court, to file a petition against a third party "who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him." Appellant realtor contends the facts of this case do not bring it within that statute, and that the trial court erred in permitting defendant-appellant Mueller to file her third party petition.

1122

This statute is an innovation in Missouri and there are few, if any, decisions on it up to this time. See 1 Carr, Mo. Civil Procedure, sec. 69, pp. 194, 196. Under the quoted clause the third party defendants (the Robisons) must or might have been liable *to* her (the original defendant Mueller) or to the plaintiff (the original plaintiff realtor) *for* all or a part of the plaintiff's (the realtor's) claim against her (the original defendant Mueller).

The plaintiff realtor's claim against the defendant Mueller was for $425 real estate commission, plus $15 for extending the abstract of title, plus $250 of the $500 earnest money paid down by purchaser Robison. The sale contract provided "Commission shall be 5%, to be paid by seller and to be a lien on the property." It was further provided in the Rules of the St. Louis Real Estate Exchange which were a part of the contract: "If purchaser wrongfully refuses to close, earnest money is to be forfeited to agent in full for commission, and purchaser shall remain liable for balance of purchase price."

From this it will be seen that if Mrs. Mueller, as third party plaintiff, had been able to establish her right to specific performance, or to the payment of the balance of the purchase price, against the Robisons, Mr. Robison would have been liable for a part of the plaintiff-appellant realtor's claim. If specific performance had been enforced, the realtor's commission would have been a lien on the land. And if it had been established that Mr. Robison wrongfully refused to close the sale, his $500 earnest money would have been forfeited to the plaintiff realtor in full for its commission.

We find no error in the record, and the judgment is affirmed. All concur.