In re the MARRIAGE of J———— A———— (W————) F————, **Petitioner-Respondent,**

and

T———— E———— W————, **Movant-Appellant.**

**No. KCD 30515.**

Missouri Court of Appeals, Western District.

July 8, 1980.

228

Sandra C. Midkiff, Kansas City, for movant-appellant.Sandra C. Midkiff, Kansas City, for movant-appellant.

George Lehnen, III, Richmond, for petitioner-respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from the judgment below denying the post dissolution motion of the appellant (father) for modification of the dissolution decree to change custody of a minor child born of the marriage from the respondent (mother) to the appellant (father). The background of this case may be simply stated.

The parties hereto were married on November 24, 1965. A son, E⸻ A⸻ W⸻, (hereafter E⸻), was born of this marriage on August 20, 1971 and was six years of age at the time of the evidentiary hearing below giving rise to this appeal. The marriage was dissolved by decree entered on October 29, 1975. This decree awarded the custody of the child to the mother with specifically enumerated visitation rights to the father reflecting approval of a previous agreement as to visitation reached by the parents.

On March 14, 1977, the father filed his motion to modify, seeking custody of the boy, in which he alleged that the circum-

stances and conditions had materially changed since the original decree. The principal thrust of the grounds stated was that since the original decree the mother had engaged in an illicit and immoral relationship, and that such situation continues to the filing of the motion; that such relationship is open, notorious and adulterous; that the mother has declared her intention to marry the man involved; that this situation renders the mother an unfit parent to retain custody of the boy; has had a serious and detrimental effect on the moral, physical and emotional welfare of the child; and requires change of custody to the father. Additionally, the father charged in his motion that the mother had deprived, denied, and interfered with his visitation rights as granted in the dissolution decree, and other charges of neglect of the boy by the mother.[1]

The motion was heard on December 12 and 13, 1977. The transcript on appeal is 526 pages in length, 24 witnesses testified, and some 27 exhibits were offered. On September 1, 1978, the trial court made extensive findings of fact and conclusions of law, denied the father's motion to modify, and ordered that the custody of the boy remain with the mother.

The appellant-father raises two points of error upon which his request for reversal depends. He states as Point I, that the trial court erred and abused its discretion in: A. failing to infer that the mother was having adulterous sexual activities in the presence of her six-year-old son; and B. admitting into evidence and giving weight to the mother's self-serving testimony on cross-examination by her own counsel (denying the fact of IA). He states, as Point II, that the judgment of the trial court is against the weight of the evidence and that the father should be awarded custody of the boy because: A. the court failed to consider the moral fitness of the mother; B. the court erred in finding the mother's conduct had no affect on the boy; and C. the father is a fit person to be custodial parent.

As could be expected under the circumstances of this case, the testimony on the motion to modify was not only lengthy and at times confusing and contradictory, but also filled with minor grievances, complaints and bickering, all extraneous to the basic issues, and was fraught with conflict in both lay and professional opinions. It became the trial court's duty to sift through this maze with the tantamount and guiding principle of the child's best welfare as the clear objective, and to enter such judgment as to the custody of the child as it believed from the facts and law was proper. *L_____ E_____ (S_____) v. J_____ A_____ E_____*, 507 S.W.2d 681[3–5] (Mo. App.1974), and cases cited therein.

On the other hand, guided by the same principles of the welfare of the child, appellate review of the judgment rendered below is restricted and well-defined. The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Appellate courts are further directed to exercise the power to set aside a judgment in a bench-tried case as against the weight of the evidence with caution and only in those instances where a firm belief exists that the decree or judgment below is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976); *C. B. H. v. R. N. H.*, 571 S.W.2d 449, 452[1] (Mo.App.1978); *In re Marriage of Roedel*, 550 S.W.2d 208, 210[1, 2] (Mo.App.1977); Rule 73.01.

Following the basic objective of the child's welfare and best interests, and applying the stated limits of the scope of appellate review, the pertinent facts revealed by this record may be thus summarized:

Following the dissolution of the marriage of the parties hereto in 1975, the mother was employed in the business office of a plastic manufacturing plant owned and operated by one J_____ F_____, then a mar-

---

1. These additional allegations are not urged upon this appeal and were not supported by substantial evidence, and are deemed abandoned.

ried man and apparently a very successful manufacturer. Some sort of romantic interest developed between them, and a social as well as business relationship ensued. The appellant-father offered evidence from a private detective and others, that J_____ F_____ was a frequent visitor at the apartment of the mother, which she and her son (whose custody is now in question) occupied, and that J_____ F_____ frequently did not leave until late at night or early morning. The mother stated that "sometimes" J_____ F_____ had spent the night in her apartment, and upon such infrequent occasions had breakfast with her and her son. At the time of the evidentiary hearing in the court below, the respondent-mother and J_____ F_____ were lawfully married and lived together with the boy in a family residence in the town where J_____ F_____'s manufacturing plant was located. The mother continued to work in the business office of the company during the hours her son was in school, and took care of the boy when he was not so engaged. There is no substantial evidence that these home and personal living arrangements following this marriage are anything other than pleasant, comfortable, normal and wholesome.

In the father's motion to modify the custody award, he charges that his former wife (respondent) "engaged in an illicit and immoral relationship" with J_____ F_____ and for "some time openly and notoriously" consorted with him "in an adulterous relationship". In his brief in this Court, as previously noted, he charges the court with error and abuse of discretion for failing to infer from the fact that she invoked the constitutional Fifth Amendment privilege and refused to answer certain questions that her "adulterous, sexual activities" were performed *"in the presence of her six-year-old son"*. The record basis for this position comes about by reason of the fact that the father-appellant, in an attempt to sustain the burden of proof placed upon him [*In re Marriage of Britton*, 574 S.W.2d 475, 476[3] (Mo.App.1978)] called the mother as his witness. During the course of counsel's direct examination of her (as a hostile witness) a series of leading questions were asked of her, of which the following are typical:

"Q. Did you and J_____ F_____ have intercourse in your home while E_____ was there living in the home?

\* \* \* \* \* \*

Q. Was J_____ F_____ ever nude in your apartment in front of E_____?

\* \* \* \* \* \*

Q. Did E_____ ever come into your bedroom when you and J_____ were there?"

The father-appellant's counsel did not ask her, however, the direct question which he charges the trial court should have inferred, and upon the basis of that court's failure to so infer, he now seeks the mandate of reversal from this Court. It was left to counsel for the mother-respondent to clarify this murky situation. The following appears:

"Q. Has E_____ ever, to your knowledge, witnessed any sexual activity by people in your home?

A. No."

To further compound the fallacious argument of appellant on this point, the record discloses that during the father-appellant's testimony the following occurred on cross-examination:

"Q. (By Mr. Lehnen) Okay. Did you tell Mrs. Redding (a social worker) that E_____ was exposed to sexual activity?

A. No. No, I didn't, because I don't know whether he was or not."

The trial court should not be faulted for failing to find a fact by inference which one party flatly and unequivocally denies and about which the other party disclaims any knowledge. Keeping in mind that the burden of proof as to the charge that the mother engaged in sexual activities with J_____ F_____ in the presence of E_____, there is not any substantial evidence to support that charge.

■ The morals and mode of life of the contesting parties in custody proceedings are always a proper and necessary subject of inquiry in such matters, and the trial and appellate courts of this State have never condoned adultery. Not only does such conduct occur in violation of law but is not in accordance with established and prevailing mores of society. However, it is generally accepted that adultery, standing alone, does not require *ipso facto* a change of custody of children from one parent to the other. It is only in those instances where the moral conduct of the offending spouse is so gross, promiscuous, open or coupled with other types of antisocial behavior as to directly affect the physical, mental, economic or social well-being of a child that the change is warranted. Each case must be considered in the light of the facts there revealed. *Paxton v. Paxton*, 319 S.W.2d 280, 290[14] (Mo.App.1958); *In re Marriage of J____ H____ M____*, 544 S.W.2d 582, 585[2] (Mo.App.1976); *In re Marriage of B____ A____ S____*, 541 S.W.2d 762, 768[5] (Mo.App.1976); *In re Marriage of Cook*, 532 S.W.2d 833, 837[8, 9] (Mo.App.1975); *D____ M____ T____ v. D____ V____ T____*, 483 S.W.2d 84, 86[2, 3] (Mo.App.1972). These principles must be applied in the instant case in the light of the further rule as stated in *In re the Marriage of Britton*, 574 S.W.2d 475, 476[3] (Mo.App.1978):

"When custody has been once adjudicated, *it is presumed* that the custodian remains suitable and the burden of proving a change of circumstances as to call for a change of custody is on the party seeking the change. * * * (Cases cited)" (Emphasis supplied)

■ The appellant-father has failed to sustain this burden to show that the mother-respondent engaged in sexual activities in the presence of E____, as he charges.

The trial court in its findings of fact stated that the testimony as to the relationship of the mother to J____ F____ as it came from the private investigator, admissions of the mother in her deposition, and her and J____ F____'s refusal to answer certain questions regarding their relationship on Fifth Amendment grounds had been "carefully considered" and the court concluded:

" * * * that regardless of what the relations between Petitioner (mother) and J____ F____ were prior to their marriage * * * they had no unfavorable or lasting effect on the minor child. * * * "

The court further found that:

" * * * Evidence was offered that the child had never witnessed any sexual activity. * * * "

These findings were amply supported by substantial evidence which was meticulously considered by the trial court. The charge of error and abuse of discretion as charged under Point I of appellant's brief is without merit.

■ The court below made extensive findings of fact as to the best interest of the boy, E____. This Court has carefully reviewed the record and agrees with these findings, as supported by substantial credible evidence. No useful purpose would be served by repeating in detail the evidence, but a brief summary will suffice.

The father-appellant at the time of the hearing below was unmarried and occupied a house on East Gregory Boulevard in Kansas City, Missouri; he was employed as Assistant General Manager of the Myron Green Cafeterias Company, Kansas City Division; if granted the custody of E____, he could make arrangements to leave his employment to take care of E____ when the boy was not in school, or if this arrangement was not practical, his parents, the boy's paternal grandparents, were willing to move to Kansas City from Omaha and establish their home so that they could assist in the care of E____.

The respondent-mother was living in a new home in the city where her husband had his manufacturing business, which she and J____ F____ had purchased during its construction and completed it in accordance with their wishes.

The court below found that the two homes were approximately equal in their physical capacity of providing living conditions for the child.

As to E_____'s health, two medical doctors who were directly involved in his health care, testified that his health was excellent; that aside from the usual childhood colds and illnesses and a bout with pneumonia when he was 3 or 4 years old, he was ill on very rare occasions; and, that he was always clean and neat in appearance and showed no signs of lack of care, and was a robust, healthy child. As one of these doctors stated, he is "a perfectly normal, healthy, red-blooded American boy".

The record discloses through the testimony of his teachers that E_____ always presented a neat and clean appearance and evidenced no emotional problems at school; that he made the highest grades and evaluation in his school work; and, that he adjusted well and made friends easily.

Both parties offered testimony from psychologists and psychiatrists regarding E_____'s mental and emotional state and the father's fitness as a parent. As could be expected, much of the testimony thus elicited was vague and difficult for laymen to comprehend. One fact emerges that demonstrates very clearly that E_____ did not evidence any objective signs of emotional or mental problems or upset at the times of the evaluations. This expert testimony was conflicting as to opinions as to whether the custody of E_____ should be changed to the father. A close study of this expert testimony shows, however, that the witnesses who recommended such a change of custody did so largely upon the basis of statements made to them by the appellant-father, rather than any objective or clinical findings exhibited by E_____, the boy. Dr. George Lytton, a highly qualified psychiatrist, had examined E_____ and had visited and had dinner with the boy, respondent-mother and her husband, and testified that the boy was relating very well to his present home environment.

It was the prerogative of the trial court to weigh and evaluate this expert testimony, and this Court finds that such testimony was supportive of the court's findings and conclusions on that facet of the case.

It is the conclusion of this Court that the judgment of the trial court is not against the weight of the evidence, as asserted under Point II of appellant's brief; that no firm belief exists that such judgment is wrong, *Murphy v. Carron*, supra; and that Point II is without merit.

It appears to this Court, however, that paragraph 4 of the trial court's Conclusions of Law which constitutes the judgment on the motion below, contains a typographical error which could lead in the future to misunderstanding and controversy. The statement in the judgment referred to (second sentence) now reads:

"* * * It is the further order of the Court that the right of reasonable visitation granted Respondent (Appellant here) in the separation agreement and dissolution decree be *deleted* and further Respondent (Appellant here) have additional temporary custody consisting of * *" (Emphasis and words in parenthesis added)

It is clear from the record that the trial court only intended that the temporary custody granted to the appellant-father, as it pertained to Christmas, be modified and enlarged, and not that the other terms of the original decree as it pertained to visitation be "deleted".

The judgment below is, therefore, modified, so that it will now provide (paragraph 4—Conclusions of Law) as follows:

"The judgment of the Court is that Respondent's (Appellant here) Motion for Modification of Child Custody is denied. It is further ordered, on the court's own motion, that the dissolution decree of October 29, 1975 be modified (Paragraph 2 thereof) by providing therein that the Respondent have additional temporary custody of the minor child consisting of one-half (½) of the time which the minor child has for Christmas vacation, to be so arranged that the Respondent has temporary custody on alternate Christmas days.

Otherwise, the decree of October 29, 1975 is to remain in full force and effect subject to the further orders of this court."

This modification is to be spread upon the permanent records of the Circuit Court of Ray County, Missouri, in case No. 10812, entitled *In re the Marriage of J———— A———— (W————) F————, Petitioner, v. T———— E———— W————, Respondent.*

As modified, the judgment is affirmed.

All concur.