**Robert M. ADAMS and Red Carpet Mehler Company, Ltd., Plaintiffs-Appellants,**

v.

**David W. KERR and Olga Kerr, Defendants-Respondents.**

Nos. 45308, 45365.

Missouri Court of Appeals, Eastern District, Division One.

May 17, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied July 15, 1983.

Gail N. Gaus, Clayton, for plaintiffs-appellants.

Albert G. Beyer, St. Louis, for defendants-respondents.

KAROHL, Judge.

Plaintiff Robert M. Adams, as purchaser, petitioned for specific performance of a real estate sales contract and damages. Co-plaintiff Red Carpet Mehler Co., Ltd. (Red Carpet) sued for a real estate commission based on a listing contract entered into with defendants Mr. and Mrs. Kerr, as sellers. Defendants filed a counterclaim and third party petition against plaintiff Red Carpet and three individual Red Carpet real estate agents for breach of fiduciary duty.

On March 4, 1980, the Kerrs, an elderly couple, listed their four-family flat with Red Carpet. The listing price was $118,000. Third party defendants Jen McCann, as agent, and Richard Birner, as broker, obtained the listing contract on behalf of Red Carpet. Birner persuaded the Kerrs to accept $110,000, if offered, and to consider financing the sale by accepting a cash down payment and a purchase money note and deed of trust.

On March 23, 1980, plaintiff Robert Adams submitted a sale contract for defendants' property for $110,000, offering $22,000 cash and a note for $88,000 secured by a first deed of trust. Robert Adams and Donald Erhardt, through their partnership A & E Associates, bought, managed and sold real estate. Unknown to the Kerrs at the time, Red Carpet, and principally third party defendant Kathryn Brethold, as agent, had represented A & E Associates for several years. Adams communicated the offer to Brethold, Brethold gave it to McCann, and McCann obtained the Kerrs' approval. At the Kerrs' request, the $88,000 note was to be amortized over thirty years but payable in full in five years.

The sale contract was signed by Adams individually as the purchaser. The Kerrs had no knowledge of A & E Associates at the time they signed the contract. The grantee on the deed was to be "as directed" by purchaser. The sale contract contained a special condition relating to a credit report, which stated:

This sale contract is subject to purchaser, at his expense, delivering to seller a credit report satisfactory to seller within ten (10) working days of the acceptance of this contract by seller. If such credit report is not satisfactory to seller, this contract shall be null and void, and earnest deposit returned to purchaser less any expense incurred by or in behalf of purchaser.

On March 29, 1980, Adams furnished the Kerrs with a net worth analysis of A & E Associates, which stated assets, liabilities and net worth as of August 1, 1979. The one page "analysis" gave no phone number for A & E Associates, account numbers, or any specific details concerning the properties owned by the business. The Kerrs took the report but were unable to locate and identify A & E Associates, although by this time they were told that Red Carpet managed property for A & E Associates. They asked for, but did not receive, a certified credit report.

On April 9, 1980, Mr. Kerr and his son, Leland, went to Red Carpet's office and informed Birner that they had decided not to go through with the contract. The Kerrs offered to reimburse Birner for his expenses. Birner left the meeting without giving a definite response. The Kerrs then received a letter dated April 10, 1980, from

Red Carpet's attorney, threatening suit on behalf of Red Carpet and the proposed purchaser.

The Kerrs and Leland attended the closing on April 18, 1980. They discovered that the grantees on the warranty deed were Robert Adams and his wife, and Donald Erhardt and his wife. The note the purchasers were to sign did not contain the five year balloon provision. Leland Kerr, speaking for his parents, requested a credit report. The Red Carpet agent, Brethold, responded, "Well, you don't need one." Brethold threatened suit if they did not close but the Kerrs refused to close without an adequate credit report. This suit followed.

At the close of all the evidence, the trial court sustained plaintiffs' and third party defendants' motions for "directed verdict" on the Kerrs' counterclaim. The counterclaim and third party petition, in Count I, alleged that Red Carpet represented both the Kerrs and Adams without the Kerrs' knowledge and breached its fiduciary duty. Count II charged that Red Carpet and its individual agents conspired to cheat and defraud defendants. In its findings of fact and conclusions of law, the trial court found that all matters concerning the sale had not been fully and adequately explained to the Kerrs, that the net worth analysis of A & E Associates was clearly unsatisfactory, making the contract void. The court entered judgment for the Kerrs on plaintiffs' petition. Both sides appealed.

■ On plaintiffs' appeal, the trial court's judgment must be affirmed unless it erroneously declares or applies the law, is unsupported by substantial evidence, or is against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ We first consider plaintiff Adam's appeal. He contends that the trial court erred in finding that the contract was void, by its terms, for failure to produce a credit report satisfactory to the sellers. The court's finding is against the weight of the evidence and a misapplication of contract law, plaintiff argues, because defendants

made no objection to the A & E credit report, he was given no opportunity to cure any defects, and the credit report was immaterial because the value of the property was sufficient security for the note.

■ Adam's argument, however, ignores the clear and unambiguous language of the contract. The sale was subject to *purchaser* delivering to seller a credit report *"satisfactory to seller."* Defendants were entitled to receive and approve a credit report of the purchaser, who on the deed was Adams and his wife and Erhardt and his wife. They never received such a credit report. Without a report there was no enforceable contract. Where the language of a contract is plain, there can be no construction by the court since there is nothing to construe. *Grantham v. Rockhurst University,* 563 S.W.2d 147, 150 (Mo.App.1978).

Further, the credit report was a material part of the contract, as the Kerrs were taking a sizeable purchase money note secured by a first deed of trust. The purchaser's credit was a significant factor in the contract. When the Kerrs told Birner they did not wish to go through with the contract Birner did not ask why. Moreover, when the Kerrs asked for a satisfactory credit report at the closing, Brethold refused, telling them it was unnecessary. Adams thus refused to comply with the contract provision.

As there was no valid contract between the parties, a court cannot grant the equitable remedy of specific performance, *Keller v. Reich,* 646 S.W.2d 141, 143 (Mo.App. 1983); *McKenna v. McKenna,* 607 S.W.2d 464, 467 (Mo.App.1980), and the trial court's judgment was supported by substantial evidence.

■ We also affirm the denial of plaintiff Red Carpet's petition for its sales commission. The question of when and how a broker becomes entitled to a commission depends on the contract. *Perkinson v. Burford,* 623 S.W.2d 30, 34 (Mo.App.1981); *McIntosh v. Frisinger,* 507 S.W.2d 419, 425 (Mo.App.1974). It is fundamental, however, that in order to earn a commission,

the broker must produce a buyer ready, able and willing to buy on the terms agreed to by the owner. *Welek Realty, Inc. v. Juneau,* 596 S.W.2d 495, 497 (Mo.App.1980). Red Carpet failed to do so, as Adams was not willing to comply with the credit report requirement. The contract was void and Red Carpet did not earn and was not entitled to a commission.

The Kerrs have appealed from the trial court's order sustaining plaintiff Red Carpet's and third party defendants' motion for a "directed verdict" at the close of all the evidence. We construe the trial court's judgment at the close of all the evidence to be a ruling as a matter of law that defendants failed to make a submissible case. Defendants argue, in effect, that they made a submissible case and were entitled to a determination by the court on the merits as to any and all possible theories of liability. In determining whether defendants made a submissible case, we consider all evidence in a light most favorable to defendants, take their evidence as true, and give them the benefit of all reasonable inferences arising from the evidence. *Spencer v. Crow Enterprises, Inc.,* 636 S.W.2d 369, 370 (Mo.App. 1982).

■ Defendant's counterclaim and third party petition, in Count I, alleged that Red Carpet and the agents breached their fiduciary duty by (1) divulging confidential information as to price and terms of sale to prospective purchasers; (2) representing both parties without full disclosure or consent to their dual capacity; and (3) violating the prohibitions of Chapter 339 RSMo 1978. As damages, defendants alleged that they were deprived of the difference between the listing price and the sale contract price ($8,000), they were hindered in selling the property because plaintiffs recorded the sale contract and sued to enforce it, and that they incurred expenses in defending the plaintiffs' suit. Defendants also asked for punitive damages for "malicious breach of the fiduciary and statutory duty" owed by plaintiffs.

■ We conclude that defendants made a submissible case of breach of fiduci-

ary duty against plaintiff Red Carpet and the third party defendants. The broker is the agent of the seller who lists the property with him unless it is otherwise understood and provided and therefore owes the seller its undivided loyalty and is required to exercise the utmost fidelity and good faith. It is the broker's duty to keep the principal fully informed, to make full disclosure of all facts, and to exercise reasonable care and diligence in the performance of his duty. The broker must not do anything which makes the transaction more difficult or burdensome for his principal or which endangers the transaction. *Herb Tillman Co. v. Sissel,* 348 S.W.2d 819, 824 (Mo.App. 1961). Moreover, "[t]here is scarcely a rule of law which has received more uniform approval than that an agent cannot serve the opposing party without the knowledge and consent of his principal." *Burton v. Pet, Inc.,* 509 S.W.2d 95, 100 (Mo.1974). A broker that represents both seller and purchaser without disclosing forfeits his commission. *Thomas J. Johnson & Co. v. Mueller,* 356 Mo. 1109, 205 S.W.2d 521, 526 (1947). Further, after the broker finds a buyer, he must not take any action that improperly hinders or prejudices his principal. *United Farm Agency, Inc. v. Murphy,* 596 S.W.2d 730, 734–35 (Mo.App.1980).

Although the trial court found that Red Carpet advised Mrs. Kerr that it managed property for Adams and A & E Associates, this was not until after the Kerrs had signed the sale contract. Thus the Kerrs were not informed of the dual representation before they signed the contract. Thereafter, Red Carpet and the third party defendants failed to pursue and furnish a credit report from the true purchasers, Mr. and Mrs. Adams and Mr. and Mrs. Erhardt. In effect, they ordered the Kerrs to close and take back a purchase money note and deed of trust from the four individual purchasers without the benefit of the credit report called for in the contract, or be sued. Red Carpet and the third party defendants caused their attorney to send a letter threatening suit to one principal, the Kerrs, when their other principal, Adams, had not

complied with the terms of the contract. They clearly breached their duty of undivided loyalty to the Kerrs. The trial court's finding that Red Carpet acted honestly is not, on these facts, a defense to the breach of fiduciary duty. *See Travagliante v. J.W. Wood Realty Co.,* 425 S.W.2d 208, 214 (Mo. 1968).

■ We find that the only element of damages on which defendants made a submissible case was that of attorney's fees incurred to defend against plaintiff Adam's specific performance suit, but not Red Carpet's suit for commission. Attorney's fees recoverable in this case are only those incurred because of involvement in collateral litigation. *Forsythe v. Starnes,* 554 S.W.2d 100, 111 (Mo.App.1977). To be awarded attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party, that the fees were necessarily and in good faith incurred to protect the wronged party from injury and that the amount of the fees is reasonable. *Id.; Johnson v. Mercantile Trust Co. National Ass'n,* 510 S.W.2d 33, 40 (Mo.1974). Defendants therefore made a submissible case on Count I of their counterclaim and third party petition and we remand for the trial court to make a determination on the merits.

We find no error in the trial court's finding that defendants failed to make a submissible case on Count II of the counterclaim and third party petition. The trial court's finding that the parties acted honestly constitutes a meritorious defense to the allegations of conspiracy to cheat and defraud, although not a defense to the breach of fiduciary duty.

In summary, we affirm the trial court's judgment in favor of defendants on the plaintiffs' petition, and the judgment in favor of plaintiffs and third party defendants on Count II of defendants' counterclaim and third party petition. We remand Count I of the counterclaim and third party petition for further proceedings consistent with this opinion.

SIMON and STEPHAN, JJ., concur.