P.A.(D.)K., Petitioner-Appellant,

v.

T.R.D., Respondent-Respondent.

No. 45914.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 20, 1983.

**584**

Martin Mazzei, Steelville, for petitioner-appellant.

Walter D. McQuie, Montgomery City, for respondent-respondent.

GAERTNER, Presiding Judge.

Appellant mother appeals from the trial court's judgment granting respondent-father's motion to modify a dissolution decree by transferring the custody of the party's two children to the father. The central issue on this appeal is whether or not the conduct and attitude of appellant following the dissolution of her marriage with respondent constitutes a change in circumstances within the meaning of § 452.410, RSMo 1978, so that modification of the prior custody decree was authorized. On mother's appeal the trial court judgment must be affirmed unless it erroneously declares or applies the law, is unsupported by substantial evidence, or is against the weight of the evidence. *Adams v. Kerr,* 655 S.W.2d 49, 52[1] (Mo.App.1983). We affirm.

The parties were divorced on February 23, 1981. The mother was awarded custody of their two minor children, a son and a daughter, then aged five and three, respectively. The father was granted temporary custody and visitation rights. On May 28, 1981, three months after the decree of dissolution, the father filed a motion to transfer primary custody of the children to him. He alleged that a significant change of circumstances in the conduct of the mother subsequent to the dissolution of the marriage made the transfer necessary to serve the best interests of the children. Based on the testimony adduced at the hearing on the father's motion to modify, the trial court entered a lengthy and detailed order summarizing the evidence and reasons underlying its order conferring upon the father the primary custody of the children.

The hearing produced the following evidence. Subsequent to the divorce, mother and the two children moved into an apartment which she later shared with another divorced woman who, in exchange for room and board for herself and her own two children, agreed to babysit and clean the apartment. During the months following her divorce, mother was openly promiscuous and admitted her numerous trysts with at least three different men during this period. She became pregnant in early February (the record is unclear whether before or after her divorce) and for some time after was unsure whose child she carried. A former paramour testified that several times she had left the children overnight with others so that she could spend the night in a hotel with him. More often, he stayed at her apartment overnight, as did the many male associates of mother's live-in babysitter. There was testimony that each of her children had interrupted mother "flagrante delicto" with another of her lovers. There was also an account intimating that the mother, live-in babysitter, and another male had engaged, more or less, in a menage à trois.

One of the mother's prior babysitters testified that when she babysat for the children she never knew where the mother could be reached. On one such occasion, she was left overnight with the children until 4:30 a.m. the following morning. The live-in babysitter also stated she was frequently left with the children with no explanation

of the mother's whereabouts. During one of the mother's extended absences, the children were left without sufficient food which the natural father immediately supplied when notified. A social worker had described the apartment as cluttered, with dirty floors, dirty dishes, unmade beds, although there were times when it was fairly well kept. Other witnesses corroborated her impressions of mother's inadequate housekeeping.

Mother, while acknowledging some of her indiscretions, parries that her children are now happy, well adjusted, and the children's best interest would be promoted by having them remain with her. Her basic thrust is that the children are in a stable environment and have suffered no detrimental effects from her past misconduct. An area social worker testified the children seemed to have a very happy kind of relationship and that their trailer home was neatly kept with the children's art work displayed. Mother claims her primary concern is her children and she has abandoned all traces of her past misconduct. However, no matter how she views the situation, we cannot ignore the overwhelming evidence before the trial court in support of its conclusion that the conduct of the mother, under all the circumstances, was not in the best interest of the children.

We have studiously considered the entire record here and the cases cited by both parties. The gist of mother's complaint on appeal is that her past moral lapses do not in themselves make her unfit and are to be measured by the affect, if any, they have on the children's welfare. *J\_\_\_\_\_ F\_\_\_\_\_ R\_\_\_\_\_ v. R\_\_\_\_\_ R\_\_\_\_\_*, 482 S.W.2d 543, 545[2] (Mo.App.1972). One affair does not make one promiscuous nor is its affect on the child always deemed adverse, particularly where the child never witnesses any sexual activity. See *In Re Marriage of F.,* 602 S.W.2d 227 (Mo.App.1980). Custody of children should not be modified as punishment for parent. *In Re Marriage of Dusing,* 654 S.W.2d 938, 943[3] (Mo.App.1983). But nothing in the trial court's decision here is punitive. On the contrary, considering the mother's admitted associations with sundry men following her divorce, which the children witnessed, coupled with her new husband's misperception of his right to replace and usurp the natural father's role and authority in rearing the children, the trial court's decision is neither arbitrary nor punitive. We find it amply supported by the record.

■ Mother denies any extra-marital intercourse either before or after her divorce with the witness who testified the children had on occasion interrupted them during their sexual activity; however, we note her testimony was diametrically opposed with his on these, as well as other, significant facts. Credibility judgments were necessarily involved in this case and the trial court was in a much better position to arrive at the correct judgment on that issue. Based on the trial court's extensive findings of fact and the record before us, mother's first contention that insufficient evidence of changed conditions existed to warrant the custody transfer has no merit.

■ Mother's second point asserts prejudice in the trial court's overruling of her oral motion in limine followed by her objections at trial to any evidence of her sexual misconduct which occurred prior to the dissolution decree. At trial, husband made several offers of proof concerning the mother's marital infidelity. Mother had sought to have this evidence excluded by an oral motion in limine during pre-trial proceedings, and by objection at the hearing on the motion to modify. The trial court deferred ruling on the motion in limine and the offers of proof and took those matters with the submission of the case on the merits. In its order granting the husband's motion to modify, the trial court overruled the mother's motion in limine and permitted evidence by one of her former boyfriends that they had engaged in sexual relations prior to her divorce. The court admitted the evidence for the limited purpose of furnishing background information relevant to the original dissolution decree as to the mother's habits, conduct, and lifestyle and their effect on the children. The court

specifically held it did not admit the evidence for the purpose of determining the ultimate issue of whether or not the custody decree previously entered should be modified. Because the trial court painstakingly detailed various other reasons in its lengthy order which we have briefly recapitulated herein, we cannot say the court's order was based solely upon the evidence which it admitted of her previous sexual indiscretion antedating the original custody decree. There was substantial evidence in the record of mother's conduct following the dissolution of her marriage to warrant the order transferring custody, disregarding the evidence of her conduct prior thereto. Therefore, no prejudice occurred to the mother in admission of this evidence.

■ However, in considering the propriety of the admission of this evidence, we find no error. As mother herself acknowledges, facts which existed at the time of the decree but were unknown to or concealed from the court are admissible to show changed circumstances permitting the court to make a modification of custody. *Brand v. Brand,* 534 S.W.2d 628, 632 (Mo.App. 1976). At the original hearing for dissolution, mother denied any extramarital misconduct. Husband's efforts to contradict her testimony were thwarted by her paramour's successful avoidance of husband's subpoena. Thus, mother avoided disclosure to the court of any unflattering evidence of her pre-dissolution behavior. In its modification order, the court noted that had these facts not been concealed from it at the dissolution trial, it might well have ruled otherwise on the custody issue. We find the court was correct in admitting this evidence at the hearing for custody modification. The trial court's decision to admit or refuse such evidence, since it falls within the realm of discretion, should not be disturbed on appeal absent a clear showing that the trial manifestly abused its discretion. *Land Clearance for Redevelopment Authority of Kansas City v. Massood,* 526 S.W.2d 354, 360 (Mo.App.1975). We find no abuse.

■ Mother's third and fourth points challenge the trial court's change of custody on the ground that the environment to which the children would be transferred was uncertain and that substantial evidence of where they were currently situated clearly demonstrated a positive environment. The record abounds with evidence concerning the father's fitness to have his children and provide a stable home life. He is steadily employed; the children would be returning to a clean, comfortable, two-story home where they had lived prior to their parents' divorce. He is an active member of the Jaycees. No evidence of his unsuitability was adduced. Mother's prior lifestyle, in sharp contrast, prompted the trial court's conclusion that her lifestyle was potentially or had been harmful to the moral development of the two children. This court cannot find such ruling erroneous either factually or legally. The evidence before the court showed that custody with the father would be in the best interest of the children. There was substantial evidence to support the judgment; the judgment was not against the weight of the evidence; there were no erroneous declarations or applications of law; and there was no showing of prejudice on the part of the trial court. *In Re Marriage of Ryterski,* 655 S.W.2d 102, 105 (Mo.App.1983). The judgment of the trial court is affirmed.

SMITH and STEPHAN, JJ., concur.