AMERICAN MORTGAGE INVESTMENT CO., Plaintiff-Appellant,

v.

HARDIN–STOCKTON CORPORATION, Defendant-Respondent,

and

Charles C. Wimes, Mid-Central Mortgage and Investment Company, Inc., and Charles C. Wimes, Statutory Trustee, Defendants-Appellants,

and

Charles C. Wimes, an individual, Defendant-Respondent-Cross-Appellant.

No. WD 33294.

Missouri Court of Appeals, Western District.

March 27, 1984.

As Modified May 23, 1984.

Jerome D. Riffell and Brian B. Myers of Campbell, Erickson, Cottingham, Morgan & Gibson, Kansas City, for American Mortgage Ins. Co.

Martin Anderson, Kansas City, for Chas. Wimes, Individual, Mid-Central Mortgage and Inv. Co., Inc.

Charles Wimes, Statutory Trustee.

James H. Horn and James Bandy of Blackwell, Sanders, Matheny, Weary, & Lombardi, Kansas City, for Hardin-Stockton Corp.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is a civil action seeking recovery of the proceeds from two sales of real properties, plus punitive damages. The judgment is affirmed in part and reversed in part and the cause is remanded.

Before proceeding further and for purposes of clarity, the parties are identified and reference is made to certain procedural developments preceding presentment of this case on appeal.

Appellant, American Mortgage Company (hereinafter American), was the original plaintiff. Respondent, Hardin-Stockton Corporation (hereinafter H.S.C.), was an original defendant. Patricia Apollo, an individual, was an original defendant and cross-claimant. John and Virginia Austin, individuals, were original defendants and cross-claimants. Mid-Central Mortgage and Investment Company-Charles C. Wimes, Statutory Trustee (hereinafter Mid-Central), was an original defendant. Respondent-Cross Appellant, Charles C. Wimes, as an individual, was an original defendant.

This appeal involves American as appellant, H.S.C. as respondent, Mid-Central-Charles C. Wimes, Statutory Trustee, as respondent, and Charles C. Wimes, an individual, as respondent and cross-appellant. Neither Apollo nor the Austins are participants on this appeal. Subsequent to the filing of this appeal, the cross-appeal of Charles C. Wimes, as an individual, was dismissed by this court under Rules 81.-12(J) and 84.04(d).

This action was initiated under an eleven-count petition. The parties entered into a stipulation by which a portion of the alleged counts were dismissed. The following allegations remained for disposition at trial: (a) breach of contract, (b) general negligence, (c) breach of fiduciary duty, (d)

negligence per se, (e) fraud, and (f) conversion. Concerning those remaining six counts, four of them, i.e., (a) breach of contract, (b) general negligence, (c) breach of fiduciary duty, and (d) negligence per-se were against H.S.C. The remaining counts of fraud and conversion were against Mid-Central and Charles Wimes.

At the close of American's case, the trial court directed a verdict for H.S.C. on the general negligence count and the negligence per se count. The trial court overruled the motions for directed verdict by Mid-American and Charles Wimes on the fraud and conversion counts. Thus, the case was submitted to the jury on the breach of contract and breach of fiduciary duty counts as against H.S.C. and for fraud and conversion as to Mid-Central and Charles Wimes.

Concerning the remaining parties and issues, the jury, in summary, returned the following verdict:

A: For American and against Mid-Central, actual damages—$54,531.34, punitive damages—$20,000.00.

B: For American and against Charles Wimes, an individual, actual damages—$54,531.34, punitive damages—$50,000.00.

C: For H.S.C. and against American on the latter's claim against H.S.C.

D: For cross-claimants and against Charles Wimes as an individual, actual damages—$10,000.00, punitive damages—$10,000.00.

The trial was presided over by the Honorable James Stubbs, assigned as a special judge. Judgment was entered by the trial court in accordance with the jury verdict. This appeal followed the overruling of timely-filed post-trial motions.

In summary, the following pertinent facts are found upon the record.

American is a North Carolina corporation engaged primarily in the business of insuring mortgages upon residential properties. American insures a percentage of a mortgage to the benefit of a lender upon default by a borrower. When default occurs, the lender normally institutes foreclosure. Under its insuring agreement, American holds the option to pay the lender a sum equal to the percentage of loss insured, or alternatively to pay the remaining balance of the mortgage to the lender, take title to the property, and offer it for resale. The record reveals that in approximately 40% to 45% of default cases, American pays off the mortgage balance, takes title, and offers the properties for resale.[1]

In the instant case, two residential properties (9010 N.W. Hamilton and 9014 N.W. Hamilton) located in Parkville, Platte County, Missouri were subject to mortgages held by the Sentinel Federal Savings and Loan Association. The borrowers (buyers) defaulted. American exercised its option to pay off the mortgage balance on both properties and take title to the properties. American then contacted H.S.C., an area real estate broker, requesting H.S.C. to list the properties for sale and to solicit purchasers. American and H.S.C. had previous dealings relative to the latter's handling of property sales. American was represented by one James Pope who traveled to Parkville, Missouri; and on February 25, 1976, on behalf of American, Pope entered into two "Exclusive Rights to Sell Agreements" pertaining to the above two properties with H.S.C. In addition to the property description and the sale listing price, these agreements granted to H.S.C. the exclusive right (for a 90-day period) to solicit buyers. Further, the agreements provided that upon the successful sales of the property, H.S.C. was "to handle the customary details involved in closing the sale of said property."

Within the 90-day period, H.S.C. secured offers from Apollo and the Austins as prospective buyers. These offers were tendered to and accepted by American. In March, 1976, Apollo and the Austins entered into a sales/purchase contract with American for the two properties. The

---

1. The validity of title, being in American, was never an issue and therefore, no further discussion of how American acquired title is undertaken herein.

agreed-to price for the Austin property was $29,900. The agreed-to price for the Apollo property was also $29,900. Upon the execution of the sale/purchase agreements, H.S.C., through its closing department, commenced preparation of American's closing documents. The closing procedures, supervised by one Lois Laudon, an employee of H.S.C., included preparation of corporate warranty deeds (to be executed by American). These deeds, along with other pertinent closing documents, were forwarded to Pope. H.S.C. had been directed by Pope to prepare the warranty deeds, but no other specific instructions were given H.S.C. by Pope in regard to the closing. After a review of the warranty deeds and the execution of same by American, they were returned to H.S.C. along with other closing documents.

Pope testified that American, at the time, had had no established procedure regarding closings and assumed that H.S.C. would process all documents and other matters relative to the closing in accordance with the normal closing procedures of H.S.C.

Neither Pope nor anyone else representing American testified to having ever attended a closing in the greater Kansas City area. Neither Pope nor any other representative of American could testify to area closing practices.

One Patrick Randolph, a professor of law at the School of Law—University of Missouri—Kansas City, testified on behalf of American. Randolph's testimony revealed that he was not even in the greater Kansas City area in 1976. In addition, Randolph admitted to never attending a residential real estate closing except the one dealing with the purchase of his own residence. However, he testified that he was experienced in realty transactions involving commercial and residential properties in California and Oregon. In addition, he testified to having read materials and having conducted inquiries from local realtors concerning local customs and practices. In summary, he concluded that it was the responsibility of the real estate broker (in this case, H.S.C.) to handle the closing.

As the account of pertinent facts continues, it will be noted that the conclusion of Randolph differed markedly from not only the procedure employed in the closing herein, but also with that of testimony from other witnesses.

The record shows that Apollo and the Austins were having difficulty securing financing. Mid-Central was chosen as the lender. H.S.C. received the executed warranty deeds and other closing documents from American. Laudon, with H.S.C., in turn forwarded a preliminary closing statement along with the American closing documents and the deeds to Mid-Central. Mid-Central closed the transactions with both Apollo and the Austins. The closings were in mid-April, 1976. H.S.C. received notice of the closings, along with payment to H.S.C. of its sales commissions and a statement of how Mid-Central purportedly distributed other funds (title insurance premiums, appraisers fees, and the net sales proceeds to American).

In October, 1976, Pope, on behalf of American, asked H.S.C. why the monies representing the net sales sum (total of $57,395.10) due American had not been forwarded. H.S.C. made immediate inquiry of Charles Wimes. H.S.C. was assured by Wimes that the payment would be forthcoming. American made inquiry of Wimes and received a like assurance. A short while later, both H.S.C. and American attempted further inquiry, only to learn that Mid-Central was out of business. The record shows that for some four months following the April, 1976 closing on the properties, Mid-Central was paying only those creditors of Mid-Central who "pressured" Mid-Central into paying. The record is clear that neither American nor H.S.C. ever asked or "pressured" Mid-Central about payment until October, 1976. Mid-Central has never paid the monies due American in full.

The corporate charter of Mid-Central was forfeited. Wimes was named a defendant

as statutory trustee for Mid-Central in addition to his individual defendant status.

The verdict and judgment have been noted above. Any additional facts applicable are developed infra within the disposition of the charged errors.

■ Under its point (1), American charges that the trial court erred in its submission of an affirmative defense instruction to American's claim of breach of contract and its claim of breach of fiduciary duty. On this appeal, American has subdivided this charged error into four subpoints. It is charged that the submission was erroneous, specifically because:

(1) Said instruction, read as a whole, is properly interpreted as an affirmative defense of contributory negligence, not as estoppel, and thus was improperly submitted based upon its total effect and a lack of basis in substantive law.

(2) Contributory negligence is not an appropriate affirmative defense to a claim for breach of contract.

(3) Under the circumstances of the instant case, contributory negligence is not an appropriate affirmative defense to a claim of breach of fiduciary duty.

(4) If the questioned instruction is determined by the court to be a submission of the affirmative defense of estoppel, then it was improperly submitted relative to American's claims for breach of contract and breach of fiduciary duty.

The challenged instruction reads as follows:

"Instruction Number Twenty-four: Your verdict must be for defendant Coldwell Banker Hardin Stockton and against plaintiff if you believe: First, plaintiff knew or should have known the dates of the closings on the sales of its properties, and Second, plaintiff failed within a reasonable time thereafter to either: advise defendant Coldwell Banker Hardin Stockton that plaintiff had not received its proceeds from the sales of its properties, or, initiate any action to protect the interest of plaintiff in its proceeds from the sales of its properties, and, Third, such failure in any one or more the respects (sic) submitted in paragraph second directly caused or direclty contributed to cause any damage plaintiff may have sustained." [2]

The dispute over the foregoing instruction centers upon American's contention that said instruction is an instruction on the affirmative defense of contributory negligence. In contrast, H.S.C. contends that the instruction is an instruction on the affirmative defense of estoppel.

In support of its argument that the instruction is upon estoppel, H.S.C. contends that American, by its own conduct (inaction and silence following the closings until October, 1976), directly caused or contributed to its loss of the sales proceeds and that such loss was due to no failure by H.S.C. to have handled the closings. It is the further contention of H.S.C. that American's conduct (i.e., inaction) reasonably caused H.S.C. to believe that the closings had been fully consummated and that American had received the sales proceeds. These contentions are the extent of H.S.C.'s argument that the foregoing instruction was based upon estoppel and it was properly supported by the evidence upon the record and the substantive law.

Before considering the contention of H.S.C., it is necessary to note the requisite elements necessary to constitute estoppel. "First, an admission, statement or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." *Oddo v. Associated Wholesale Grocers, Inc.*, 387 S.W.2d 169, 173 (Mo.App.1965).

Keeping in mind the foregoing principle and in turn applying the argument of H.S.C. against it, the argument of H.S.C. fails. It is obvious from the very reading of the foregoing instruction that it does not

**2.** It is not disputed between the parties that said instruction is not an MAI instruction.

contain the requisite elements of estoppel. The instruction, as submitted, does not refer to any act by H.S.C. in reliance upon any act by American, and it does not refer to any injury that would result to H.S.C. if American is not estopped from asserting its claim.

There exists yet another principle which dispels the reliance by H.S.C. upon estoppel. "No man can set up another's act or conduct as ground for estoppel unless he has himself been misled or deceived by such act or conduct; nor can he set it up where he knew or had the same means of knowledge as to the truth as did the other party." *Hall v. Charlton*, 447 S.W.2d 5, 9 (Mo.App.1969). Further, "[i]t has been uniformly declared, where parties have equal means of knowledge, there is no estoppel in favor of either." *Harris v. A.P. Nichols Investment Co.*, 25 S.W.2d 484, 488 (Mo. App.1930). *Hall* and *Harris* both involved actions by an insured against his insurance broker for failing to provide the agreed upon coverage. In both cases, the insured had no knowledge that the insurance policy was inadequate, and thus, the court held that due to the insured's lack of knowledge, the insured had no duty to minimize possible damages. This court finds no reason to draw any distinction between the agency relationship of an insurance broker-insured and a real estate broker-customer, therefore, *Hall* and *Harris* are both applicable and controlling in the instant case on the issue of estoppel.

As previously noted, the above challenged instruction did not submit to the jury the element of reliance by H.S.C. upon the conduct of American. In addition and perhaps more importantly, it cannot be said that under the facts and circumstances herein, H.S.C. had the same means of knowledge as to the truth as did American because H.S.C. alone dealt with Mid-Central and had knowledge superior to American.

In the instant case, the evidence at best reveals that American knew that a closing *might* occur in mid-April, 1976. The documents provided American from Mid-Central only made American aware that a transaction might be in the making, but as testified to by American's expert, often a seller knows of many possible or potential lenders, and just because a seller receives preliminary closing reports and F.N.M.A.[3] affidavits does not mean that lender will be the actual lender. Further, the evidence herein revealed that H.S.C. dealt with Mid-Central and H.S.C. alone knew the closing date, and the record reveals that H.S.C. did not notify American that Mid-Central would be the lender and that Mid-Central would handle the closings.

Under its argument for estoppel, H.S.C. now urges the imposition of duties upon American based and dependent upon facts solely within the knowledge of H.S.C. There is no merit to the contention of H.S.C. that American had a duty to "protect its interests" or to "notify H.S.C. that American had not received its proceeds" when, as the evidence reveals, H.S.C. really did very little regarding keeping American advised of the handling of the closings. What the evidence reveals is American's reliance upon H.S.C. to handle the closings and American had no actual knowledge of the closings. It follows that the affirmative defense of estoppel, under the facts and circumstances of the instant case, was inapplicable.

Referring once again to the above instruction, it becomes obvious that it resembles MAI 32.02 with only the omission of a required finding of negligence. There is no MAI directly applicable to the circumstances of the instant case. Thus, the challenged instruction can be viewed either as a "not in MAI" or as a "modification of MAI 32.02." Rule 70.02(e) requires: "Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or instructions shall be simple, brief, impartial, free from argument and

3. F.N.M.A. designates the Federal National    Mortgage Association.

shall not submit to the jury or require findings of detailed evidentiary facts."

■ Having found above that the challenged instruction did not, under the facts and circumstances herein, submit the affirmative defense of estoppel, this court must answer the question: What, if any, affirmative defense did the instruction submit or attempt to submit? This court finds and concludes that the instruction submitted to the jury the affirmative defense of contributory negligence. In considering the issue of the sufficiency of the evidence to support an instruction, this court is bound by the following rule: "In determining the sufficiency of the evidence to support the submission of a contributory negligence instruction, we consider the evidence in the light most favorable to the defendant, giving it the benefit of all favorable inferences therefrom, and disregard plaintiff's evidence unless it tends to support the giving of the instruction." *George v. Gross and Janes Co.*, 634 S.W.2d 579, 581 (Mo.App.1982); *Welch v. Hyatt*, 578 S.W.2d 905, 912 (Mo. banc 1979).

Applying the foregoing evidentiary rule, it must be said that the challenged instruction, as to form and content, was proper under the evidence because the evidence shows that as regards paragraph first, American, by and through Pope, knew or should have known of the closing dates. As regards paragraph second, there is evidence upon the record to support the failures alleged in said paragraph. It is further revealed that there is evidence to support the conclusions within the instruction that American's failures contributed or caused its loss. It cannot be said that the challenged instruction failed to adequately present to the jury ultimate factual issues as to whether American had such knowledge and whether American failed to notify H.S.C. or failed to protect its interests in the sales proceeds.

The foregoing notwithstanding, however, it must also be concluded that the challenged instruction in effect was an instruction to the jury which would act as a complete bar to the claims of American for breach of contract and breach of fiduciary duty if the jury were to find that American failed to do one or more of the acts set forth in paragraph second. If the only requirement was the determination that there existed an evidentiary basis for the instruction, then American's challenge thereto would be groundless. However, there are other questions which this court must answer relative to the final determination of the correctness of the challenged instructions. This court must answer the question of whether the challenged instruction has any basis in substantive law (i.e., whether contributory negligence is a proper defense to a claim for breach of contract and/or a claim for breach of fiduciary duty). A further preliminary question arises which asks: What was the relationship of H.S.C. as the real estate broker to American, its principal and seller?

Our courts have described such a relationship as a "confidential and fiduciary relationship under which respondent was obligated to be perfectly frank with his principal, to make a complete and full disclosure of all material facts concerning the transaction which might affect her decision to sell her property to him, to be loyal to his client, and to exercise the utmost fidelity and good faith towards her. (citation omitted) He was under ties of obligation as exacting as those imposed on a trustee in favor of his beneficiary." *Dittmeier v. Missouri Real Estate Commission*, 237 S.W.2d 201, 206 (Mo.App.1951). *See also Herb Tillman Co. v. Sissel*, 348 S.W.2d 819 (Mo.App.1961) and *Roth v. Roth*, 571 S.W.2d 659 (Mo.App.1978). Thus, failure of a real estate broker to perform his contractual and fiduciary duties supports an action either for breach of contract or for negligence. *Fli-Back Co., Inc. v. Philadelphia Manufacturers Mutual Insurance Co.*, 502 F.2d 214 (4th Cir.1974).

■ The near absence of authority in our own state leads this court to rely upon other sources for an answer to the questions. It has been declared:

"In an action to recover damages for the breach of a contract, however, the con-

tributory negligence of the plaintiff ordinarily does not preclude his recovery, as would be the case in an action of tort. Such negligence rarely releases the defendant from the obligation to perform his contract, but is always to be considered in fixing the amount of the damages—that is, so much of the damages as is attributable to the plaintiff's negligence—should be excluded from recovery." 17 Am.Jur.2d *Contracts* § 371 (1964).

American cites to this court *Elam v. Smithdeal Realty & Insurance Co.*, 182 N.C. 599, 109 S.E. 632, 634 (1921) which declares, "[W]here the action is brought for breach of contract, and that is established, contributory negligence is not allowed to defeat the action in toto, but the negligence of the claimant contributing to the injury is to be properly considered as to the issue of damages."

Referring again to *Harris*, some insight is gained because in *Harris*, it was declared, "We are of the opinion that an agent cannot avoid liability to his principal for an alleged failure on the part of such principal to determine, prior to the occurrence of a loss or damage ... whether such agent has consummated the act for which he was employed." *Harris*, 25 S.W.2d at 488.

The only apparent contrary authority on this question is *Bewley v. Allright Carpark, Inc.*, 617 S.W.2d 547 (Mo.App.1981), which is distinguishable because the *Bewley* decision involved a contractual bailment and the court found the breach of contract action to have aspects of negligence. In another case, *Kap-pel Fabrics, Inc. v. R.R. Jones & Sons, Inc.*, 402 S.W.2d 49 (Mo. App.1966), it was held that the broker/client relationship was not a fiduciary relationship and by such finding, imposed upon the plaintiff in that case a duty not to rely upon the broker. *Kap-pel* is also distinguishable from the instant case.

Thus, as regards the challenged instruction relative to American's claim of breach of contract, this court holds that said instruction was erroneous because as drafted, it completely barred any recovery by American if the jury were to find that American had committed one or more acts referenced by paragraph second, and such prohibition is contrary to the better authority, *Harris, Bewley*, and 17 Am.Jur.2d, *supra.*

■ This court, therefore, concludes that concerning the substantive law regarding the affirmative defense of contributory negligence in actions for breach of contract, such defense merely mitigates against the alleged damages and finds no support in the substantive law permitting such defense to act as a complete bar to recovery in actions for breach of contract.

■ Having thus ruled the question as it applies to actions for breach of contract, this court must also consider American's allegation that the same principle is applicable to actions for a breach of fiduciary duty. Consideration must be given because in the instant case, the breach is based upon an alleged tort as opposed to contract. This court concludes that under the facts and circumstances herein, there was a fiduciary relationship as between American and H.S.C., *Kap-pel, supra* notwithstanding.

■ This court further concludes that although American's claim rests in tort rather than contract, the trial court erred in submitting the affirmative defense of contributory negligence to American's claim of a breach of fiduciary duty. Such conclusion finds its basis in the rule announced in *McMurray v. Garnett*, 182 S.W. 128, 130 (Mo.App.1915). *McMurray* was a case involving the sale of a cigar stand wherein the broker breached his fiduciary duty by advising his seller to sell his cigar stand in exchange for a note/mortgage on other property which the broker knew were worthless. The court ruled that any negligence on the part of the seller did not relieve the broker from liability for the loss that resulted. The court ruled:

"The fact that plaintiff made futile efforts to find Hertslet [the buyer] and to collect his note and was slow to realize

the manner in which he had gotten into his unfortunate situation does not release defendant. This is not a suit by plaintiff against Hertslet for recission, but by a principal who intrusted the entire matter of making a sale to his agent, with no opportunity to know or learn the facts for himself. Hence, the doctrine as to placing defendant 'in status quo' and of 'caveat emptor' have no application. Defendant was not injured by plaintiff's delay of a few months in bringing suit. It was doubtless plaintiff's duty to do *what he could to make his loss as light as* possible, but that ought not to relieve the defendant from liability for the loss he caused. In a case of this kind, the agent cannot set up the principal's negligence as a defense."

Thus, as with the claim of breach of contract, it must also be concluded that there is no support in the substantive law allowing the defense of contributory negligence to act as a complete bar to the recovery by a principal as against his agent upon a claim for breach of fiduciary duty.

American's challenge to the instruction is found to have merit and American's point (1) is sustained to its favor. The challenged instruction, as drafted and submitted, was erroneous because it allowed that if the jury found one or more acts set forth in paragraph second to have been done by American, then American was completely barred in seeking recovery under either its claim for breach of contract and/or breach of fiduciary duty. If the instruction were to have been worded as to mitigate the claimed damages, it would have been in all respects proper.

■ Quite often when a reversal of a judgment is announced by our appellate courts, remaining charged errors on appeal are not reached or addressed. In the instant case, reversal as to that portion of the judgment which upon trial was entered to the favor of H.S.C. must be entered based upon the above conclusions and rulings of this court arising out of the erroneous instruction on contributory negligence. The case must be remanded for further proceedings in conformity to the result reached on that issue. That ruling alone, however, would leave the parties in a quandary as to the other issues involved in this appeal relative as to how or upon what alternative theories, if any, the case could be retried. In other words, there remains the additional question of the trial court's ruling as to American's claims of general negligence and negligence per se. As noted above, the trial court directed a verdict to the favor of H.S.C. on both claims. The determination of the correctness of that ruling must be made or otherwise, should this case be retried, the parties have no guideline as to whether those issues remain viable upon retrial.

The trial court, in having directed a verdict for H.S.C. on American's claims of general negligence and negligence per se, serves as the basis for two final charged errors on this appeal by American.

Under its point (2), American charges that the trial court erred in directing a verdict to the favor of H.S.C. on American's claim of general negligence against H.S.C. because: (a) the evidence on said claim was sufficient to have permitted the claim to have been submitted to the jury, and (b) the relationship between American and H.S.C. was that of principal and agent and was fiduciary in nature which, by law, permits a cause of action premised upon negligence upon the failure to perform duties owed or alternatively the negligent performance of those duties.

The question of submissibility is premised upon a review of the evidence in a light most favorable to the plaintiff giving him the benefit of all reasonable inferences therefrom, and the evidence of the defendant must be disregarded except where such evidence supports or aids the evidence of the plaintiff. *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848 (Mo. banc 1975); *Lent v. Lent,* 543 S.W.2d 312 (Mo.App. 1976).

■ For a claim based upon general negligence to be submissible and/or to prevail, it must be shown that the party against

whom such a claim is brought owed a duty to the claimant, that the responsible party breached his duty by act or omission and that as a result of that breached duty, injury or damage resulted. *Merritt v. Wilkerson*, 360 S.W.2d 283 (Mo.App.1962).

As against American's claim of general negligence, H.S.C. defends upon the premise that American's claim, if any, is upon contract and not tort. Such a contention is not entirely correct in its application to the facts and circumstances of the instant case. What must first be determined is the nature of the claim as to whether it is one in tort or contract. "In order to determine the character of the action, whether ex contractu or ex delicto, it is necessary to ascertain the source of the duty claimed to have been violated." *State ex rel. Cummins Missouri Diesel Sales Corp. v. Eversole*, 332 S.W.2d 53, 57 (Mo.App.1960). More simply stated, if the duty claimed is one arising solely from or imposed only by the contract, then the action lies in contract. "On the other hand, if a party sues for breach of duty prescribed by law as an incident of the relation or status which the parties have created by their agreement, the action may be one in tort, even though the breach of duty may also be a violation of the terms of the contract." *Eversole* at 58.

■ The courts of our state have never recognized the mere breach of a contract as providing a basis for tort liability. In contract, however, the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort. In this latter instance, it is the act and not the breach of the contract which serves as the basis for the tort claim. See *Midwest Refrigeration, Inc. v. Bateman*, 340 U.S. 942, 71 S.Ct. 506, 95 L.Ed. 679 (1951). Where the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract. *New Trends, Inc. v. Stafford-Lowden Co.*, 537 S.W.2d 778 (Tex.Civ.App.1976).

■ As regards the relationship of the parties herein (i.e., Seller as principal and broker as agent) the broker is required to exercise reasonable skill, diligence, and care in the handling of business given over or entrusted to the broker. *Thomas J. Johnson & Co. v. Mueller*, 205 S.W.2d 521 (Mo.1947). Our law, while restating the standard of care imposed, also recognizes that such standard is dependent upon the nature and extent of the job undertaken by the broker. The duty of the broker includes to perform his job, to act in accordance with authority vested in him by his principal and to follow and adhere to any instructions from his principal in accordance with the prevailing custom in the community where the broker conducts his business. *Fitzpatrick v. Federer Realty Co.*, 351 S.W.2d 673 (Mo.1961). Factual circumstances surrounding the relative status of the parties and other factual circumstances peculiar to such particular case dictates the acts/omissions which may be required under the standard of reasonable care. *Myers v. Adler*, 188 Mo.App. 607, 176 S.W. 538 (1915).

As regards the instant case, it is clear that the parties entered into a seller/broker contract from which a fiduciary duty arose. In addition to the contract, the record shows that American introduced evidence revealing that American expected H.S.C. to prepare and transmit documents relative to the property sales for execution. The record shows that H.S.C. did prepare and secure the executed corporate warranty deeds. American's evidence, however, also revealed that American expected H.S.C. to attend the sale closing and to see that the sales proceeds were forwarded to American. In addition, American's evidence revealed that it was an out-of-state corporation and that H.S.C. knew of its foreign status. American's evidence reveals that H.S.C. did not inform American of the closing dates or when or how the sale proceeds

were to be received. This latter, according to American's evidence, is within the community custom. American's evidence also revealed that H.S.C. did not inform American as to who the lender was or that the lender would handle the closing. American's evidence further revealed that H.S.C. did not attend the closing. There was also evidence that H.S.C. made no investigation as to the solvency of the lender, nor were the sale proceeds secured at the time the warranty deeds were released by H.S.C.

This court has listed but a few of the above evidentiary matters not for the purpose to either weigh or pass upon their validity. That prerogative rests squarely with the trier of fact and not this court. The brief evidentiary reference is made to show that the trial court erred in directing a verdict for H.S.C. on American's claim of general negligence. The above evidence, coupled with additional evidence upon this record, clearly shows that American did, by its evidence, establish a submissible case to at least withstand a motion for directed verdict. The question thus turns upon whether the plaintiff's evidence (American herein) presented in support of its case in chief, could cause reasonable minds to differ. Stated yet another way, a directed verdict does not lie unless reasonable minds could not differ. *Connizzo v. General American Life Insurance Co.*, 520 S.W.2d 661 (Mo.App.1975), *McCarthy v. Wulff*, 452 S.W.2d 164 (Mo. 1970), *Abel v. Campbell 66 Express, Inc.*, 378 S.W.2d 269 (Mo.App.1964), *Woosley v. State Auto Mutual Insurance Co.*, 600 S.W.2d 210 (Mo.App.1980).

In the instant case, the record reveals that H.S.C., relative to custom and practice, introduced evidence to refute American's evidence. Reviewed in its entirety, it must be concluded that American's evidence, relative to its claim of general negligence, was sufficient to withstand the motion for directed verdict filed by H.S.C. The trial court erred in directing such verdict.

American's point (2) is found to have merit and is sustained to American's favor.

Under its final point (3), American charges that the trial court erred in directing a verdict to the favor of H.S.C. upon American's claim of negligence per se.

In support of this final charged error, American sets forth the requisite elements of an actionable claim of negligence per se. These are: (a) there must be the violation of a statute or regulation, (b) the injured party must be within the class of persons intended to be protected by the statute or regulation, (c) the injury complained of must be one that the statute or regulation was designed to protect, and (d) the violation should be the proximate cause of the injury or damage.

American cites to § 339.100(5), RSMo 1969 [4], which reads:

"§ 339.100 Power to suspend or revoke licenses . . . .

(5) Failing, within a reasonable time, to account for or to remit any moneys, valuable documents, or other property, coming into his possession, which belongs to others;"

for the proposal that the Missouri Real Estate Commission may discipline a broker who fails to account for or to remit monies or other valuables coming into his possession which belong to others. It is American's contention that the acts/omissions of H.S.C. in the instant case bring H.S.C. within the foregoing statute.

This court cannot agree that the evidence upon the record herein brings the acts/omissions of H.S.C. within the purview of the statute. It is evident from the reading of § 339.100 and authority interpreting said statute that it is penal in nature and is intended to address those instances wherein a broker has come into possession of monies or other valuable property owned by another and has failed to account for said monies or valuables. This court is equally not persuaded by

---

**4.** Said statute was amended in 1978. Said amendment has no application to the instant case because, as observed, the events giving rise to this appeal occurred prior to said amendment.

American's additional reference to § 339.-100(7), which reads: "(7) Any other conduct which constitutes untrustworthy or improper fraudulent or dishonest dealings or demonstrates bad faith or gross incompetence."

The evidence in the instant case supports a submissible case upon the theories of breach of contract, breach of fiduciary duty and general negligence, but that same evidence does not support a claim for negligence per se pursuant to § 339.100.

To further support its claim of negligence per se, American cites to this court the following regulation promulgated by the Missouri Real Estate Commission:

"A broker charged with closing a sale shall, at the time the transaction is consummated, deliver to the parties a complete detailed closing statement or statements showing the amount and source of all receipts and the amount, payee, and purpose of all disbursements handled by the broker and the broker shall retain a copy of such statement or statements in his records."

While both American and H.S.C. strongly argue the sufficiency of or the lack of the evidence to bring the instant case within or prevent it from coming within the above regulation, they both overlook a crucial fact requisite within the regulation and a fact which, as yet, has not been determined in the instant case. The above regulation, when read in its entirety, speaks to and rests upon the *assumption* that in a given case, the broker is *charged* with the closing of the sale. In the instant case, that is an issue to be decided by the trier of fact as American contends that H.S.C. was so charged and H.S.C. contends it was not so charged. The foregoing regulation, while a good and constructive regulation for the practicing realtor/broker, said regulation, under the facts and circumstances herein, does not suffice as a basis for the support of a claim by American for negligence per se.

American's final point (3) is found to be meritless and is ruled against it. In order that final disposition of this appeal might be reached, there remains the consideration of the judgment entered against Mid-Central and Charles Wimes as statutory trustee and cross-appeal of Charles Wimes as an individual.

As noted above, the jury returned its verdict in favor of American and against Mid-Central and Charles Wimes as statutory trustee for actual and punitive damages upon American's claims for fraud and conversion. No purpose would be served in again reciting the facts upon this record relative to the conduct of Mid-Central regarding the monies due American by Mid-Central. It suffices to say that the evidence was sufficient to establish and hence support the jury's verdict for actual and punitive damages for fraud and conversion by Mid-Central.

The final matter requiring the attention of this court is the cross-appeal by Charles Wimes as an individual. As noted above, the cross-appeal of Charles C. Wimes as an individual was dismissed by order of this court and no further discussion is authorized or warranted.

In conclusion and upon the reasons set forth herein, it is the decision of this court that the portion of the judgment awarding the sum of $54,531.34 in actual damages and $20,000.00 in punitive damages to American Mortgage Insurance Co. and against Mid-Central Mortgage and Investment Co., Charles Wimes, Statutory Trustee, is in all respects affirmed. It is the further decision of this court that the portion of the judgment heretofore entered in favor of Hardin Stockton Corp. as against the claims of American Mortgage Insurance Co. is reversed and the cause is remanded for further proceedings in conformity with the opinion herein.

All concur.