In re A.J. RACKERS, INC., Debtor.

The EXCHANGE NATIONAL BANK, Plaintiff,

v.

A.J. RACKERS, INC. and Jack E. Brown, Trustee, Defendants.

Bankruptcy No. 93–20595–C.
Adv. No. 93–2043–C.

United States Bankruptcy Court,
W.D. Missouri, C.D.

May 5, 1994.

John W. Kuebler, Hendren & Andrae, Jefferson City, MO, for plaintiff.

Ronald Prenger, Jefferson City, MO, for debtor/defendant.

John Landwehr, Jefferson City, MO, for trustee.

Jack E. Brown, Columbia, MO, Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

On December 6, 1993, the Exchange National Bank of Jefferson City (the Bank) filed this adversary proceeding against the Debtor, A.J. Rackers, Inc., and its statutory trustees to "Determine the Validity of Security Interest." A trial was set and held on March 30, 1994 at which time the Court heard statements of counsel, evidence from witnesses,

and legal arguments. All parties were permitted to file post-trial briefs. The Court received those briefs, and the case is ripe for decision.

### Facts

The Debtor sold, installed and repaired heating and air conditioning equipment. The Debtor's shareholders were the children of the business' founder, A.J. Rackers, who turned the business over to his children in the mid–1970s.[1] The General Manager managed the day-to-day business affairs of the Debtor. From December, 1988 or January, 1989 until August, 1989, Kenneth Hoelscher (Hoelscher) was the Debtor's General Manager.

The Bank served as the Debtor's commercial lender for more than 20 years.[2] In January, 1989, the Debtor and the Bank entered into an agreement whereby the Bank would consolidate fifteen earlier promissory notes into a single note in exchange for a security interest in the Debtor's equipment, accounts receivables, proceeds, and other unencumbered property. While previous security agreements between the Debtor and the Bank described some of the collateral, the January, 1989 security agreement was admittedly larger in scope. Hoelscher and David Rackers (Rackers) executed the security agreement on January 24, 1989. Hoelscher and Rackers attached a copy of a resolution by the Debtor's board of directors which authorized Hoelscher and Rackers to act for corporation. They were specifically empowered to borrow money and grant liens or encumbrances on corporate property. A list of the Debtor's officers and directors was also attached to the security agreement.[3] After the Debtor paid all accrued interest on

the prior notes, the Bank took the new consolidated note on February 16, 1989.

The Debtor failed to file its annual registration report for 1987 in violation of V.A.M.S. § 351.120 (1991). Consequently, the secretary of state forfeited the corporate charter on December 15, 1988. See V.A.M.S. § 351.525 (1986), repealed by L.1991, H.B. No. 219, § A, effective May 29, 1991. Neither the Bank nor the Debtor's officers and directors had actual knowledge of the forfeiture when the loan documents and security agreement were executed.

The Debtor's board of directors met on a monthly basis. The meetings were well attended, with no more than one absence at any particular meeting. The board met on January 23, 1989 to consider the resolution authorizing Hoelscher and Rackers to consolidate the Debtor's loans and grant a security interest to the Bank. There was complete attendance at the January 23, 1989 meeting. The officers and directors had actual knowledge of the January 1989 security agreement. No officer or director objected to the board's delegation of authority before, during or after the January 23 board meeting.

The directors became aware of the corporate forfeiture in March, 1989. The Debtor continued to conduct business, e.g., bidding new contracts, accepting new contracts, finishing existing contracts, and purchasing supplies, until August, 1989. Throughout this time period, the Debtor held itself out as a corporation and transacted business in the corporation's name. No effort was made to wind up the corporation's affairs until the business was closed in August, 1989.

The Debtor defaulted on its obligations to the Bank, and the Bank foreclosed on the Debtor's property in October, 1989. The

---

1. The business was originally turned over to A.J. Rackers' nine children. In 1988, only five remained. The remaining shareholders were: David L. Rackers, Virginia M. Prenger, Ruth K. Wolken, Paul S. Rackers, Mary A. Haaf, and Ann L. McClain.

2. The evidence suggests that the Bank's relationship to the Debtor dates back at least to 1960 and possibly back to the 1930's when the Debtor first started doing business. The Bank has no records prior to 1960, and the Debtor's current share-

holders have no personal knowledge of the Debtor's financial dealings prior to the mid–1970s when they acquired their ownership interest.

3. The Debtor's directors in January, 1989 were: Herman Page, Chairperson; David Rackers, President; Paul Rackers, Vice–President; Ruth Wolken, Treasurer; Kenny Hoelscher, Secretary; Virginia Prenger; and Ann McClain. Herman Page and Hoelscher had no ownership interest in the Debtor.

Bank held a foreclosure sale in January, 1990.

An involuntary petition was filed against the Debtor and its statutory trustees on August 5, 1993.[4] The Debtor consented to the jurisdiction of this Court on September 16, 1993. On December 6, 1993, the Bank filed this adversary action. These were the precipitating factors preceding this hearing.

*Discussion*

The issue in this case is deceptively simple. Can a person, without knowledge of a corporate forfeiture, grant a security interest in corporate assets to a third party also unaware of the corporate forfeiture? The Bank argued three theories to establish the validity of its security interest. First, the Bank argued that under V.A.M.S. § 351.525, the officers and directors, who became statutory trustees by operation of law, delegated authority to wind up the corporation's affairs to Hoelscher and Rackers. Second, the Bank argued that even if the officers and directors did not delegate their authority as statutory trustees, they acquiesced to the actions of Hoelscher and Rackers. Thus, by implied consent, Hoelscher and Rackers granted a valid security interest to the Bank. Third, the Bank argued that the officers and directors were estopped from denying the corporate form.

The Bank raised substantially similar arguments in a related proceeding, *Exchange Nat'l Bank v. Wolken,* 819 S.W.2d 45 (Mo. 1991) (en banc). In that case, the Bank filed a replevin action against Ruth Wolken (Wolken), one of the Debtor's former directors, seeking to obtain equipment in Wolken's possession allegedly pledged as collateral to the Bank. *Id.* at 45. Wolken answered the replevin complaint with an affirmative defense. *Id.* Wolken claimed that the Bank's security interest was void because the corporation and the individuals who signed the agreement had no authority to grant a security interest after the corporate forfeiture. *Id.* at 46. The Bank filed no responsive pleading. *Id.* The Bank raised

acquiescence and estoppel arguments for the first time in its summary judgment brief. *Id.* The trial court granted summary judgment for Wolken, and the matter came before the Missouri Supreme Court on appeal. *Id.* at 45.

The Missouri Supreme Court considered whether the Bank waived the acquiescence and estoppel arguments by failing to file a responsive pleading. *Id.* at 45. The court found that the arguments were not waived, nor was summary judgment appropriate because material issues of fact remained. *Id.* at 48. The Missouri Supreme Court noted that:

> The security agreement purports to be a new corporate act. It is valid only if the persons executing the document on behalf of the corporation have the power to do so under the laws of Missouri.

*Id.* at 47. However, the court recognized that the theories advanced by the Bank, if grounded in fact, would demonstrate that the persons acting on behalf of the corporation had the power to encumber the corporation's property. *Id.* at 48. With regards to the delegation of authority and acquiescence theories offered by the Bank, the court stated:

> A trier of fact could find that the execution of the security agreement was a proper action of the statutory trustees in providing for the debts of the corporation and winding up its affairs. The trier of fact could also find that Wolken and the other statutory trustees acquiesced in the actions of the officers of the corporation in executing the new note and providing further security, and in acquiescing, participated in these acts.

*Id.* Similarly, the court stated the Bank could make a case for estoppel, but material issues of fact remained making summary judgment inappropriate. *Id.*

With this background in mind, the Court now turns to the Bank's specific arguments.

---

**4.** Under V.A.M.S. § 351.525, the corporation's officers and directors become the statutory trust-

ees of the corporation upon forfeiture.

## A. Delegation

■ Section 351.525 provides that if any corporation fails to file its annual registration, it shall forfeit its corporate charter, subject to recision. The directors and officers in office at the time forfeiture occurs become the statutory trustees of the corporation with:

> full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; and the trustees as such shall have power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such....

V.A.M.S. § 351.525. This transformation from officer or director to statutory trustee occurs by operation of law. *Turner v. Browne*, 351 Mo. 541, 173 S.W.2d 868, 875 (1943). The statutory trustees have broad power to wind up corporate affairs, but they have no power to transact any business of the corporation, except to wind up its affairs and distribute assets. *Leibson v. Henry*, 356 Mo. 953, 204 S.W.2d 310, 316 (1947) (en banc). While at least one federal court recognized that statutory trustees may have to carry on the business of the corporation for a period of time after forfeiture to protect corporate assets, *see United States v. Glen Upton, Inc.*, 378 F.Supp. 1028, 1033 (W.D.Mo. 1974); the Missouri Supreme Court holds that the statutory trustees are "without power or authority to transact any business of the corporation, except to wind up its affairs and distribute its assets." *Turner*, 173 S.W.2d at 875, *Leibson v. Henry*, 204 S.W.2d at 316.

■ The statutory trustees may delegate authority to a third party. *Id.* at 875–76. In *Turner*, the statutory trustees of a defunct corporation transferred all of the corporation's assets to a liquidating trustee charged with selling the assets and paying the creditors. *Id.* at 870. The Missouri Supreme Court affirmed this delegation because the authority delegated was the authority to wind up corporate affairs. *Id.* at 875–76. Stated simply, the statutory trustees only possess the authority to wind up corporate affairs, and this authority may be delegated. *See generally, id.*

■ Analyzing the acts of statutory trustees focuses on whether the act was for the purpose of winding up corporate affairs. If the act was not for the purposes of winding up affairs, the statutory trustees had no power to act, nor could they delegate that authority because they never possessed it in the first place. Here, the Bank argued that the officers and directors on January 23, 1989 delegated their authority as statutory trustees to Hoelscher and Rackers.

■ Subjectively and objectively, no delegation occurred because the granting of the security interest in exchange for loan consolidation was not a winding up of corporate affairs. On a subjective level, the officers and directors were not aware that the corporation had been forfeited, and they did not intend to wind up and liquidate the corporation when they delegated authority at the January 23, 1989 meeting. Thus, the delegation was not for the purpose of winding up the corporation. On an objective level, the delegation that occurred on January 23 was the delegation of authority to borrow money and pledge collateral. The corporation continued to conduct business, bid new jobs and accept new contracts. The loan consolidation and security agreement enabled the Debtor to continue its business until August 1989. The collateral pledge was inconsistent with winding up corporate affairs. From an objective viewpoint, the delegation was beyond the statutory trustee's scope of authority. Thus, the consolidation of loans and new pledge of collateral was an improper act by the statutory trustees, and the statutory trustees could not delegate the authority to take an action that they themselves could not do. As a result, the delegation theory does not validate the Bank's security interest.

## B. Acquiescence

The Bank argued that the Debtor's officers and directors, acting in their capacity as statutory trustees, acquiesced to the acts of Hoelscher and Rackers.

■ The Missouri Supreme Court suggested in *Wolken* that the statutory trustees

may have acquiesced in the actions of Hoelscher and Rackers, and in acquiescing, participated in those acts. 819 S.W.2d at 47. Similarly in *Turner,* the court held that inactive directors acquiesced to the active directors' appointment of a liquidating trustee, and by their acquiescence "ratified and confirmed" the appointment. 173 S.W.2d at 876. However, the acquiescence theory presupposes that the action was:

a proper action of the statutory trustees in providing for the debts of the corporation and winding up its affairs.

*Wolken,* 819 S.W.2d at 47. The acquiescence theory asks the same question that the delegation theory asks: did the statutory trustees act to wind up corporate affairs?

■ In this case, the Debtor's officers and directors generally deferred to the judgment of the General Manager in the day-to-day affairs of the corporation. During January, 1989 Hoelscher was the General Manager. While the financial affairs were normally delegated to the General Manager, the officers and directors had a meeting to discuss a resolution specifically empowering Hoelscher and Rackers to act. The board passed that resolution. The board had actual knowledge of the January, 1989 security agreement, accepted the benefits of the consolidated loan, and made no objection to the agreement. While the facts in this case demonstrate that the officers and directors acquiesced to the actions of Hoelscher and Rackers, the action was not an action to wind up corporate affairs. Consequently, the necessary precondition of the acquiescence theory has not been met; there was no proper act to which the statutory trustees could acquiesce. The acquiescence theory does not validate the Bank's security interest.

### C. Estoppel

The Bank also argued that the Debtor and the statutory trustees are estopped from denying their corporate existence based on their conduct. The Missouri Supreme Court suggested that an estoppel theory could apply to the facts of this case. *Wolken,* 819 S.W.2d at 48. The Debtor responds that a forfeited corporation cannot transfer an interest in real property.

■ Section 351.525 affects an *ipso facto* dissolution of a corporation; accordingly, any corporation forfeited under this provision ceases to be a corporation *de jure* and *de facto.* *Leibson v. Henry,* 204 S.W.2d at 317. Notwithstanding the effects of § 351.525, Missouri courts have recognized that:

[i]t is a well settled principle that where one contracts with the body assuming to act as a corporation or by a name distinctly implying a corporate existence, both parties in a suit upon the contract are usually estopped from denying such corporate existence.

*Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971) (quotation marks and citations omitted). This rule was adopted by the Missouri Supreme Court in *State ex rel. Jay Bee Stores, Inc. v. Edwards,* 636 S.W.2d 61, 63 (Mo.1982) (en banc). In *Edwards,* the Missouri Supreme Court stated:

[the corporate president] cannot consistently enter into the contract in the name of the corporation and deny now that the corporation existed at the time. *Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971). He is estopped from claiming now that relator dealt with him as an individual rather than as a representative of the corporation.

*Id.*

The Debtor has attempted to distinguish *Schneider* by characterizing the decision as one in which the estoppel was based on an admission of corporate existence in the pleadings. Since the Debtor has consistently raised its lack of corporate existence as a defense to the January 1989 security agreement, the Debtor argued that *Schneider* is inapplicable.

The Debtor reads *Schneider* too narrowly. First, a broad reading of *Schneider* was adopted by the Missouri Supreme Court in *Edwards,* 636 S.W.2d at 63. Second, the *Schneider* court stated that its corporation by estoppel holding is "[o]ver and above" its estoppel on the pleadings holding. Third, the *Schneider* case was the first of four cases involving the demise of Best Truck Lines, Inc. *See Schneider,* 472 S.W.2d 655; *Riley*

v. Best Truck Lines, Inc., 510 S.W.2d 229 (Mo.App.1974); *Pacific Intermountain Express Co. v. Best Truck Lines, Inc.*, 518 S.W.2d 469 (Mo.App.1974); *Gordon's Transports, Inc. v. Best Truck Lines, Inc.*, 524 S.W.2d 43 (Mo.App.1975). In each of those cases, corporate forfeiture was raised as a contract defense, and in each case the defense was found invalid. Only *Schneider* involved an admission in the pleadings. The same court that decided *Schneider* read that decision as having two alternate holdings, estoppel based on the pleadings *and* estoppel based on conduct, applying the second holding to the other Best Truck Lines cases. *Pacific Intermountain Express Co.*, 518 S.W.2d at 471; *see Gordon's Transports, Inc.*, 524 S.W.2d at 44.

For the Bank to succeed on an estoppel theory, it must prove "every fact essential to create it...." *Wolken*, 819 S.W.2d at 48 (quotations and citations omitted). Estoppel involves three elements:

> [f]irst, an admission, statement or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admissions, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*American Mortgage Inv. Co. v. Hardin–Stockton Corp.*, 671 S.W.2d 283, 288 (Mo. App.1984). Further, it has been uniformly declared, where parties have equal means of knowledge, there is no estoppel in favor of either. *Id.* at 289.

■ Here, the Bank dealt with the Debtor for over 20 years as a corporation. At the time of the January, 1989 security agreement, the Debtor held itself out as a corporation. The Bank asked for, and received, a board of directors' resolution indicating Hoelscher's and Rackers's authority to act on the Debtor's behalf. Moreover, the corporation continued to conduct business in the corporate name after the January, 1989 security agreement was executed. These statements and acts are inconsistent with a denial of the corporate form, satisfying the first element of estoppel. The Bank consolidated the Debtor's prior notes and accepted collateral on the basis of those representations, satisfying the second element of estoppel. Finally, injury would result from allowing the Debtor to deny its corporate existence because the Bank would lose its security interest in certain items of collateral.[5] This satisfies the third element of estoppel. The Court finds that the Bank proved each element of estoppel.

■ The Debtor and the bankruptcy trustee argue that both the Debtor and the Bank had equal means of knowledge concerning the Debtor's corporate existence such that there is no estoppel. *See American Mortgage Inv. Co. v. Hardin–Stockton Corp.*, 671 S.W.2d at 289. Certainly, the Debtor and bankruptcy trustee are correct that corporate charters are public records, and any person may verify a corporation's corporate existence with the secretary of state. However, the Missouri courts have not interpreted the requirements of estoppel to impose an affirmative duty to verify corporate existence upon all parties to a contract. *See generally, Edwards*, 636 S.W.2d at 63; *Schneider*, 472 S.W.2d at 659. In fact, accepting the argument that access to public records is the "equal means of knowledge" sufficient to defeat estoppel would eviscerate the "corporation by estoppel" doctrine. Every person would have "equal means" to determine a corporation's existence, and no one could assert a corporation by estoppel. The Court is unwilling to read this doctrine out of Missouri law. It is likely that under certain circumstances there may be an affirmative duty to verify corporate existence with the secretary of state prior to contracting with a corporation; the Missouri courts have yet to be faced with that situation. Nor is the Court faced with that situation here. The Bank transacted business with the Debtor *as a corporation* for over 20 years. The

---

5. The parties have also argued the validity of the Bank's prior security agreements. It is claimed that a deficiency in the collateral description prevented the security interests from attaching to the collateral. If this argument holds true, the Bank would have no collateral securing its loans to the Debtor. The Court makes no ruling on this argument, but notes that the Bank would suffer significant harm if the Debtor is allowed to invalidate the January, 1989 security agreement.

Court does not believe that under those circumstances there was a duty to verify the corporate form. Therefore, the Court concludes that the Debtor is estopped from denying its corporate existence.

### Estoppel and the Bankruptcy Trustee

The bankruptcy trustee, Jack Brown, maintains that even if the acquiescence or estoppel arguments are effective against the statutory trustees, the arguments are not effective against him. The bankruptcy trustee relies on *In re Munzenreider*, 34 B.R. 82, 84–85 (Bank.M.D.Fla.1983), and the "strong arm clause" of the Code, *see* 11 U.S.C. § 544. This same argument was presented to the Seventh Circuit in *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 439 (7th Cir.1980), which rejected the argument under § 70(c) of the Bankruptcy Act, the statutory precursor to § 544.

In *Pubs*, the court held that a party may have sufficient rights in collateral for a security interest to attach under Uniform Commercial Code § 9–203:

> if the true owner of the collateral has agreed to the debtor's use of the collateral as security or if the true owner has become *estopped* to deny the creation or existence of the security interest.

*Id.* at 436 (emphasis in original). Under the facts of *Pubs*, the court found a sufficient basis for estoppel and concluded that a bank's security interest attached to collateral pledged by two corporate promoters. *Id.* at 439. The promoters, who were the corporation's sole shareholders, fully executed the security agreement in their individual capacities *after* the collateral had been transferred to the corporation. *Id.* at 436–37. The corporation claimed an interest superior to the bank in the corporation's bankruptcy. *Id.* The bankruptcy trustee claimed, notwithstanding the estoppel, an interest superior to the bank because of the trustee's status as a hypothetical lien creditor. *Id.* at 439. While recognizing the bankruptcy trustee's strong arm powers, the court found attachment by estoppel valid, if properly perfected, against all subsequent claimants including, purchasers, lienholders, and true owners. *Id.* at 439.

According to the Sixth Circuit, issues of attachment affect a priority contest between the debtor and secured lender, while issues of perfection affect a priority contest between two or more creditors. *Id.* An actual judicial lien creditor at state law could not attack the security interest on attachment grounds. Thus, the bankruptcy trustee, as a hypothetical lien creditor, was similarly bound. *Id.* at 440.

At least one bankruptcy court in the Eighth Circuit has adopted reasoning of *Pubs*, holding that estoppel is a sufficient basis for attachment under the U.C.C. *See In re Cook*, 63 B.R. 789, 798 (Bank.D.N.D. 1986). However, the *Cook* court found that the facts failed to establish estoppel. *Id.* Also, at least one Missouri case has considered *Pubs*, but found the case factually distinguishable. *See First Tenn. Bank v. Graphic Art Centre, Inc.*, 859 S.W.2d 858, 865–66 (Mo.App.1993).

This Court agrees with the bankruptcy trustee that, as a general rule, the trustee is not bound by estoppel. However, the estoppel in this case is different in kind from the general rule. The Court is persuaded by the *Pubs* reasoning and concludes that attachment by estoppel is valid attachment under U.C.C. § 9–203.[6] When properly perfected, it cannot be defeated by the bankruptcy trustee under § 544's strong arm powers.

In the present case, two of the statutory trustees purported to grant a security interest in the corporation's name after forfeiture of the corporate charter. As discussed in above, the facts establish a corporation by estoppel under Missouri law. Thus, Hoelscher and Rackers had sufficient rights in the collateral, on an estoppel theory, for the security interest to attach. *See Pubs*, 618 F.2d at 436. Exchange National Bank properly perfected that security interest, which has not been shown to be otherwise invalid. Therefore, that interest is a validly perfected security interest as to all third

---

**6.** Missouri has adopted Article Nine of the Uniform Commercial Code at V.A.M.S. § 400.9–101 et seq. (1986), and U.C.C. § 9–203 may be found at V.A.M.S. § 400.9–203.

parties, and it is not subject to collateral attack by the bankruptcy trustee. *See id.* at 438.

### Conclusion

Based on the foregoing discussion, it is hereby ORDERED, DECREED and AD-JUDGED that the Bank holds a valid, per-fected security interest in the Debtor's equip-ment, accounts receivables, proceeds, and other unencumbered property as described in the January, 1989 security agreement.

This *Memorandum Opinion* constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.